JAMES HAWLEY WEBBER, EXr.

v.

EDMUND C. CLARK et al.

*Filed at Ottawa January 22, 1891.*

1. BANKRUPTCY—*title of assignee—character and extent of it.* Where a bankrupt holds only the naked legal title to land in trust for another who is the equitable owner, no title to the property will pass to the assignee in bankruptcy.

2. An assignee in bankruptcy takes no greater right than the bankrupt had, except that of avoiding fraudulent conveyances. In other respects he takes the bankrupt's estate subject to all liens and affected with all equities existing against it in the hands of the bankrupt. He, like an assignee under the Insolvent Debtor's act, takes as a volunteer.

3. RECORDING LAW—*purchasers at judicial sales—how far protected against prior unrecorded deeds.* The statute (section 31 of the Conveyance act) protects purchasers at judicial sales, as well as other sales, against prior unrecorded deeds. Therefore, a purchaser at a bankrupt sale will be protected against a prior unrecorded deed of the bankrupt, if the purchaser has no notice thereof, and is not chargeable with facts sufficient to put him on inquiry.

4. SAME—*notice afforded by the record—as to purchaser under decree in bankruptcy.* The record of deeds showed conveyances by a bankrupt of land not included in his schedule, which were recorded after the adjudication in bankruptcy, but before the filing of a petition of his assignee for leave to sell, in which the deeds were not sought to be set aside, and the petition showed that the bankrupt's title was a mere cloud, which it was sought to remove in the interest of others: *Held*, that the record of such deeds from the bankrupt, taken in connection with the other facts, was sufficient to put a purchaser on inquiry as to the bankrupt's title.

5. NOTICE—*purchaser at judicial sale—as to matters of record.* A purchaser at a judicial sale is chargeable with notice of such material facts as the record of the proceedings under which he derives title discloses, and he will be presumed to have examined the record before purchasing.

6. A petition of an assignee in bankruptcy for the sale of land, disclosed the fact that the bankrupt had not scheduled the land as a part of his estate, and showed that the application was made, not at the instance of creditors, but in the interest of others claiming title adversely, who had agreed to bid enough to pay the expenses of the sale,

and the decree ordered the sale, only, of the interest of the bankrupt, without any finding of title in him, and failed to show there was any necessity for the sale to pay debts. The land was in the possession of one holding under a prior unrecorded deed of the bankrupt, and was worth $200 per acre, and it was sold for about fifty cents per acre : *Held,* that these facts were sufficient to put the purchaser on inquiry as to the bankrupt's title.

7. SAME—*notice to agent—as notice to principal.* Where an attorney is employed to aid in acquiring the title to land for his client, the latter will be chargeable with notice of all such material facts as may have come to the knowledge of the former during the course of his employment or agency.

8. BURNT RECORDS ACT—*effect of decree confirming title.* A decree under the Burnt Records act, restoring lost records and confirming a party's title to land, is not conclusive of such party's ownership of the land, and will not preclude the equitable owner from showing that such party held the land in trust. The confirmation of the legal title in one is not in any manner inconsistent with the fact that such title is held for the benefit of another.

APPEAL from the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

The original bill in this case was filed in the circuit court of Cook county, June 21, 1878, by Lydia Beebe, against Edmund C. Clark, Clara H. Clark, (his wife,) Arthur Warner, James H. Webber, August Miller, Selden Fish, John Sobieski and Charles Herrick, to foreclose the deed of trust on sub-lots 2 and 3, of lot 3, in assessor's subdivision of La Framboise reservation, in township 40, north, range 12, east, in Cook county, Illinois, containing twenty acres.

The bill shows that on September 1, 1875, Lydia Beebe loaned to Edmund C. Clark $3000 for three years, at ten per cent interest, payable semi-annually, secured by Clark's principal note for $3000, and six interest notes of $150 each, payable, the first in six months, and the others six months thereafter, respectively, the payment of which was guaranteed by Selden Fish, and also secured by a deed of trust executed by said Clark and wife to said James H. Webber; that on

17—136 ILL.

April 21, 1876, Clark and wife conveyed the premises to one Asher Warner, subject to this deed of trust, and who, being in possession of the land, borrowed from Mrs. Beebe, in the year 1877, an additional $1000, and which, by agreement, was to be a further lien under the same deed of trust executed by said Clark and wife, and to be collected the same as the $3000 loan. The bill made Charles Herrick, August Miller, John Sobieski and Selden Fish defendants, charging that they pretended to have some interest in the mortgaged premises, and prayed for a foreclosure and sale.

Herrick and Miller filed their joint answer, admitting the execution of the deed of trust by Clark and Webber, but not admitting the alleged loans, and denying that Clark, at the date of such deed of trust, had any title to the land therein described. By their answer they further alleged, that the only title Clark had was derived from Silas B. Gassette, who, on November 7, 1872, conveyed the premises to Thaddeus B. Beecher by deed recorded May 19, 1873 ; that on December 1, 1872, Beecher filed his petition under the Burnt Records act, in the Superior Court of Cook county, against said Charles Herrick and others, to have his title confirmed by decree against the defendant therein; that on November 3, 1873, the said Beecher, by the fraudulent conduct of his counsel, procured a decree in said cause, confirming his title to the premises; that on October 18, 1873, T. H. Hall & Co. filed a petition in bankruptcy, against said Beecher and Wilbur F. Chetfield, in the United States District Court for the Northern District of Illinois; that on November 1, 1873, Beecher and Chetfield were adjudged bankrupts, and Bradford Hancock was appointed assignee for their estate in bankruptcy. The answer further alleges, that on petition of the assignee he was ordered by the United States District Court to sell the interest of Beecher in the lands in controversy, with other lands, and that in pursuance of such order, the lands, amounting to three hundred and ten acres, were sold to William G. Grant, for the

sum of $160; that the sale was approved by the court, and the assignee's deed made to Grant, April 24, 1876, and that on October 2, 1876, Grant and wife conveyed the land in dispute to Charles Herrick, defendant, which deed was recorded November 9, 1876. The answer further shows, that Miller is in possession as tenant of Herrick, and that Herrick had acquired certain tax deeds, and also a deed from Webber, Rhoads and Frederick M. Clark, which need not here be noticed, as no title is shown by them to the land in controversy. Herrick also filed his cross-bill setting up the same matters, and alleging that said deed of trust to Webber is a cloud upon his title, and praying that it be cancelled, etc.

Lydia Beebe, the complainant, died *pendente lite*, and James H. Webber, her executor, was substituted, who, upon leave, answered the cross-bill, setting up substantially the same things as are alleged in the original bill, and denying that the trust deed was not a lien upon the lands; admits that Edmund C. Clark, the maker of the trust deed to Mrs. Beebe, as *cestui que trust*, and Webber, the trustee, derived title to said premises about July 25, 1875, from said Beecher, through the conveyances executed by Stephen T. King; denies the averments of the cross-bill as to the bankruptcy proceeding against said Beecher and Chetfield; denies that Herrick acquired tax titles; admits the burnt records proceeding in the Superior Court, and that the title of the said premises was confirmed in said Beecher, and alleges that Beecher held the title to said premises, during all the time, in trust for Albert H. Walker and John E. Sayles, who were the equitable owners thereof, said Beecher having no beneficial interest therein; that Beecher, on January 12, 1875, by deed recorded January 18, 1875, conveyed all his interest in the said premises to Sayles and Walker; that on January 23, 1875, Walker and wife, by deed recorded the same day, conveyed the premises to said Sayles; that on May 24, 1875, Sayles and wife, by deed recorded September 7, 1875, conveyed said premises to Stephen T.

King, and that King conveyed to said Edward C. Clark; that said Beebe loaned said money to said E. C. Clark, and received said security in good faith, believing that said Clark was the legal and equitable owner of said premises, and without notice or information of the pretended title of said Herrick therein; that said Beecher, having only a naked legal title, without any equitable interest in said premises at the time of his bankruptcy, did not inventory the same in bankruptcy; that said order of July 1, 1875, to sell said Beecher's interest in said premises, the sale of February 29, 1876, said report of sale and said order of April 10, 1876, confirming the sale and ordering the execution of a deed, the making of the deed of April 24, 1876, by Hancock, assignee, to Grant, and said deed of October 24, 1876, by said Grant and wife to said Herrick, were all had and done at the instance of said Herrick, in order to acquire the title of said Clark in said premises, and impair the security of said Beebe created by said deed of trust, and with notice of the fact that said Beecher had no equitable interest in said premises, but only held the legal title in trust; that said Grant was the attorney for said Herrick, and acted for him in securing said order for the sale of said premises by said assignee, and had full notice to that effect; that said Beecher held said premises in trust, as aforesaid; that said Grant and Herrick acquired no interest in said premises by virtue of said proceedings; that said tax deeds are void for a failure to comply with the law.

Subsequently, the death of Charles Herrick was suggested, and Anna B. Herrick, Henry F. Herrick, Wendle B. Herrick and Charles B. Herrick, his heirs-at-law, were substituted. Afterward, the death of Charles B. Herrick was also suggested, and his heirs-at-law were substituted as parties defendant.

Both parties claim title through Silas B. Gassette and Thaddeus B. Beecher. Gassette conveyed to Beecher, November 7, 1872, by deed recorded May 19, 1873. In December, 1872, Beecher filed his petition in the Superior Court to have his

·title to the premises confirmed, and a decree to that effect was entered November 12, 1873. October 21, 1873, Beecher and Chetfield were adjudged bankrupts, and Hancock appointed assignee. The land in controversy was not scheduled as the property of either of the bankrupts, but on May 1, 1875, the assignee filed his petition in the bankrupt court for leave to sell the property here involved, and other property which appeared on record in Beecher's name, in which it was stated "that neither of the schedules of the said Beecher or Chetfield makes any mention whatever of any interest in the above described premises; that the assignee is informed and believes that said deed (Gassette to Beecher) is a cloud upon the title of a great many individual owners of different portions of said above described premises, and that said owners are farmers now in possession of portions thereof, some of whom have been in possession of said premises for many years last past, and have applied to your petitioner to advertise and sell the interest of said Beecher in said premises, and have offered to bid therefor such a sum as shall pay all expenses attending the sale; wherefore your petitioner prays an order may be entered," etc., to sell all right, title and interest which was in Beecher at the date of the filing of the petition in bankruptcy, etc.

A sale was made February 29, 1876, to William C. Grant, reported and confirmed April 10, 1876, and assignee's deed made to Grant April 24, 1876, and recorded April 26, 1876. The sale was of the three hundred and ten acres *en masse*, which included the twenty acres in controversy, for the sum of $160. There are no allegations in the petition for sale showing that it was necessary to sell the land to pay the debts of ·the bankrupt, or that there were any debts proved, or remaining unpaid. October 2, 1876, Grant conveyed that part of the land here involved, to Charles Herrick, by deed recorded November 9, 1876.

The proof shows, beyond dispute, that John E. Sayles and Albert H. Walker paid the entire purchase money for the deed from Gassette, and took the deed in the name of Beecher, by his consent, and that Beecher never had any beneficial interest in the premises whatever, but in fact held the naked legal title in trust from Sayles and Walker. The evidence also shows a power of attorney from Beecher and wife to Selden Fish, dated January 16, 1873, duly recorded, empowering Fish to sell and convey the premises. The execution of this power of attorney was proved by the deposition of Beecher. It also shows a deed from Beecher, by Fish, attorney in fact, to King, dated December 24, 1874, and recorded the same day; also, a deed from Beecher to Sayles and Walker, dated January 12, 1875, recorded January 18, 1875; a deed from Walker to Sayles, dated January 23, 1875, and recorded the same day; a deed from Sayles to Stephen T. King, dated May 24, 1875, and recorded September 7, 1875; a deed from King to Edmund C. Clark, dated July 29, 1875, recorded September 20, 1875; a deed of trust from Clark and wife to James H. Webber, to secure Beecher's debt, dated September 1, 1875, recorded September 20, 1875; and a deed from Clark to Warner, dated April 21, 1876, and recorded the following day.

A decree was entered dismissing the original bill for want of equity. It finds that Edmund C. Clark, at the time of the execution of the deed of trust, was not seized in fee of the premises, and had no interest therein to convey; that Warner acquired no estate under his deed from Clark; that as against complainants in the cross-bill, Warner never had any title in the said premises; that Beecher and Chetfield were adjudged bankrupts on October 18, 1873, and Hancock was appointed assignee on October 21, 1873; that on November 21, 1873, the register in bankruptcy conveyed to Hancock, as assignee, all the estate which said Beecher was entitled to on October 18, 1873; that the complainants derived title through and under the sale in bankruptcy, and by the deeds, etc., before

mentioned, made by the assignee to Grant, and from Grant to Herrick; that the said deed of trust from Clark to Webber is not a lien on said premises; that neither said Beebe nor Webber has any lien on or interest in said premises by virtue of said trust deed, or the money loaned for which it is a pretended security,—that is, against all the defendants in the cross-bill and amended cross-bill; that the complainants in the cross-bill and amended cross-bill, Henry F. Herrick, William P. Herrick and Charles B. Herrick, infant sons of Charles Herrick, deceased, are seized in fee simple as tenants in common of the said premises, free and unincumbered by said deed of trust. Webber, as the executor of the last will and testament of Lydia Beebe, appealed from the decree of the circuit court, and brings the case here for a reversal of the decree.

Messrs. ROBERTS, HUTCHINSON & THOMAS, for the appellant:

The purchaser at an assignee's sale in bankruptcy takes title free and unincumbered, unless he has either actual or constructive notice of the incumbrance. *Burt* v. *Paper Co.* 86 Ill. 66; *Wiegleb* v. *Thomsen,* 102 id. 156.

The assignee succeeds to all the legal and equitable rights of the bankrupt, (*Westbay* v. *Williams,* 5 Bradw. 521,) but to nothing more. He takes subject to all incumbrances and equities of others. *Burgett* v. *Paxton,* 99 Ill. 288; *Tallcott* v. *Dudley,* 4 Scam. 427; *Stow* v. *Yarwood,* 20 Ill. 497; *Holbrook* v. *Dickenson,* 56 id. 497.

Trust property does not pass to an assignee. *Matteson* v. *Kellogg,* 15 Ill. 547; *Rhoades* v. *Blackiston,* 106 Mass. 334; *Faxon* v. *Folvey,* 110 id. 392; U. S. Rev. Stat. sec. 5053.

The assignee did not even take the legal title, because there was no equitable interest in the bankrupt. The assignee only takes such estates as may be of some benefit to the bankrupt. *Rhoades* v. *Blackiston,* 106 Mass. 334; *Faxon* v. *Folvey,* 110 id. 392.

The fact that Beecher was adjudged a bankrupt pending the burnt records proceeding, did not oust the Superior Court of jurisdiction to enter the decree, because Beecher had no interest which could be affected by his bankruptcy.

The assignee would not have been a proper party to the suit, because he had no interest in the subject matter. Story's Eq. Pl. sec. 349, and note.

The purchaser at a judicial sale can not take, through his deed, any greater title than was authorized by the order of sale, nor any greater interest than was prayed to be sold by the petitioner. Rorer on Judicial Sales, p. 188; sec. 444; *Shower* v. *Lynn,* 2 How. 43; *Gold* v. *Ryan,* 14 Ill. 53; *White* v. *Morrison,* 11 id. 361.

It is well established law that a judgment may be set aside or impeached collaterally, during the term or afterward, for fraud. Bigelow on Fraud, 86; *Edson* v. *Cummings,* 52 Mich. 52; *Rush* v. *Rush,* 46 Iowa, 648.

Mr. GEORGE S. ELDRIDGE, also for the appellant.

Mr. MATTHEW BRADY, for the appellees:

The deed of an assignee in bankruptcy is the same as a deed from the bankrupt before adjudication. *Ryder* v. *Rush,* 102 Ill. 338.

Where the legal title is held in trust for another, and a third person, without notice of the trust, at a sale on execution against the holder of the legal title, purchases the lands, such third person will thereby acquire the legal title free from the trust. *Emmons* v. *Moore,* 85 Ill. 304.

Although a grantee in a deed may hold the legal title in trust for another, this will not preclude a third person from acquiring the title free from the trust by sale on execution against such grantee, if he has no notice of the manner in which the title is held, and acts in good faith. *Emmons* v. *Moore,* 85 Ill. 305.

The purchaser at a bankrupt sale will hold the title against a prior unrecorded deed of the bankrupt. *Holbrook* v. *Dickenson*, 56 Ill. 497; *Hardin* v. *Osborne*, 94 id. 571.

A purchaser at a sale of real estate by an assignee in bankruptcy, which the bankrupt held in trust, will take the title discharged of the trust, if he had no notice of the trust. *Faxon* v. *Folvey*, 110 Mass. 392.

At an assignee's sale in bankruptcy the purchaser takes the title free and untrammeled, unless it be incumbered, and he has notice thereof, either actual or constructive. *Burt* v. *Paper Manf. Co.* 86 Ill. 66.

After one was adjudged a bankrupt, he conveyed, etc., and after his discharge sued for the price. It was held he had nothing to convey, and therefore had no cause of action. *French* v. *Carr*, 2 Gilm. 664.

A decree in bankruptcy and the appointment of an assignee pass all title from the bankrupt to the assignee, and a sale thereafter made by the assignee will not be at all affected by a subsequent decree relating to the same premises. *Holbrook* v. *Brenner*, 31 Ill. 501.

Mere inadequacy of consideration will not defeat a purchaser for a valuable consideration, without notice. Perry on Trusts, sec. 220.

A purchaser at a judicial sale may be a *bona fide* purchaser. One without notice is such a purchaser. Pomeroy's Eq. Jur. sec. 724; *Robinson* v. *Rowan*, 2 Scam. 499; *Choteau* v. *Jones*, 11 Ill. 300.

A party purchasing land, the title coming through one holding the legal title of record, without notice of any secret trust claimed under a verbal agreement, will be protected against such claim. *Pratt* v. *Stone*, 80 Ill. 440; *McDaid* v. *Call*, 111 id. 298; *Jenkins* v. *Rosenberg*, 105 id. 157.

A *bona fide* purchaser for a valuable consideration, without notice, express or implied, is entitled to full protection. Pomeroy's Eq. Jur. sec. 658, and cases there cited; Perry on Trusts,

sec. 828; *Massell* v. *M.*, 2 P. Wms. 681; *Payne* v. *Compton*, 2 Y. & Col. 457.

A deed takes effect from the time of filing for record. *Nattinger* v. *Ware*, 41 Ill. 245.

The deed first filed and recorded is given the preference. *Brookfield* v. *Goodrich*, 32 Ill. 363.

The deed first filed for record is given preference, and passes title. *Delano* v. *Bennett*, 90 Ill. 533.

A purchaser of lands is presumed not to have notice of an unrecorded interest therein, and notice to such purchaser must be of such character as to take the place of registry. *Turpin* v. *Ogle*, 4 Bradw. 611.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The execution of the deed of trust, to foreclose which this bill was filed, is not denied, and there can be no dispute that it was given to secure a *bona fide* loan made by Lydia Beebe, in her lifetime, to Edmund C. Clark, and that subsequent to the sale of the land by Clark to Warner, by the agreement of parties, the trust deed was to stand as security for an additional loan made by Mrs. Beebe to said Warner.

If the grantor in the trust deed had any title to convey to Webber, trustee in the trust deed made to secure Mrs. Beebe's loan, it is derived from Thaddeus B. Beecher, under whom both parties in interest claim, and is as follows: A power of attorney from Beecher and wife to Seldon Fish, dated January 16, 1873, duly recorded; a deed from Beecher and wife, by Fish, attorney in fact, to Stephen T. King, dated December 24, 1874, and recorded on the same day; a deed from Beecher to John E. Sayles and Albert H. Walker, dated January 12, 1875, and recorded January 18, 1875; a deed from Albert H. Walker to John E. Sayles, dated January 23, 1875, and recorded on the same day; a deed from said Sayles to Stephen T. King, dated May 24, 1875, and recorded Septem-

ber 7, 1875; and a deed from Stephen T. King and wife to Edmund C. Clark, dated July 29, 1875, and recorded on September 20, following. If the foregoing were all the conveyances, they would clearly pass whatever title was in Beecher, to Edmund C. Clark, and his deed of trust to Webber, dated September 1, 1875, was a valid incumbrance on the land, and Clark's deed of April 21, 1876, vested Warner with the title, subject to the incumbrance created by the trust deed to Webber.

Beecher, and his partner, Chetfield, were duly adjudged bankrupts on the 21st of October, 1873, and Bradford Hancock was appointed their assignee, and on petition of the assignee an order was made by the District Court of the United States, on July 1, 1875, for the sale of Beecher's interest in certain lands, including that in controversy, and a sale made thereof, in pursuance of such order, to William C. Grant, on February 29, 1876, and the assignee's deed recorded April 24, 1876. The contention of appellees is, that this sale in February, 1876, passed the absolute title to the purchaser at the assignee's sale, and the court so decreed. On the other hand, appellant insists that Beecher held the naked legal title, only, and, consequently, the land did not pass to his assignee, but remained unaffected by the bankruptcy proceedings. The evidence is convincing that Beecher held the land in his name merely as a trustee, for the benefit of Sayles and Walker, and to convey the same as they might direct,—that Beecher had no beneficial interest in the property whatever. If that was the case, the property did not pass to the assignee, or he become invested with any title or interest therein by virtue of the register's deed. U. S. Rev. Stat. sec. 5053; *Faxon* v. *Folvey*, 110 Mass. 392.

A mere holder of the legal title to property in trust for another is not its owner, and, as a general rule, such property is not liable for his debts. This rule, however, has its exceptions, but it is unnecessary to notice them here. An insolvent debtor, by making a voluntary assignment of his property and

effects, can pass no greater right or title than he is possessed of. His assignee can assert only such title as the assignor might assert. The same rule applies, with some exceptions, to bankrupt estates. In such cases the assignee takes no greater right than the bankrupt had, except that he may avoid fraudulent conveyances and preferences in fraud of the Bankrupt law. In other respects the assignee takes a bankrupt estate subject to all liens and affected with all equities that exist against the property in the hands of the bankrupt.

The question presented by the facts before us is not, however, whether the assignee took any greater or different interest in the land than that held by the bankrupt at the time of the adjudication in bankruptcy. If the contest was, here, between Sayles and Walker, the beneficial owners of the property, and the assignee in bankruptcy, it would seem clear that their superior equity must prevail, as the rule is well established that such assignee in bankruptcy takes the bankrupt estate as a volunteer, and subject, as before said, to all the liens, incumbrances and equities existing against or in the same in the hands of the bankrupt. *Talcott* v. *Dudley*, 4 Scam. 427; *Holbrook* v. *Brenner*, 31 Ill. 502; *Burgett* v. *Paxton*, 99 id. 288; *Wiegleb* v. *Thomsen*, 102 id. 156; *Rhoads* v. *Blackiston*, 106 Mass. 324; *Stewart* v. *Platt*, 11 Otto, 731; *Yeatman* v. *Savings Institution*, 95 U. S. 766.

The principal question of law involved is one arising under the registry laws of this State. Section 31 of the Conveyance act provides that deeds and other instruments authorized to be recorded "shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers without notice; and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers without notice, until the same shall be filed for record." This statute has been held to protect the purchaser from the heir as against a prior unrecorded deed of his ancestor; (*Kennedy* v. *Northrup*, 15 Ill.

148; *Rupert* v. *Mark,* id. 540; *Bowen* v. *Prout,* 52 id. 354;) also, the purchaser at an administrator's sale from a prior un-recorded deed of the intestate. (*Choteau* v. *Jones,* 11 Ill. 300.) The subsequent purchasers who are protected against unre-corded conveyances, include purchasers at judicial sales as well as other sales. *McNett* v. *Turner,* 16 Wall. (83 U. S.) 352. Therefore, a purchaser at a bankrupt sale will be protected against a prior unrecorded deed of the bankrupt, if the pur-chaser has no notice thereof, and is not chargeable with facts sufficient to put him upon inquiry. (*Holbrook* v. *Dickenson,* 56 Ill. 497; *Burt* v. *Batavia Paper Co.* 86 id. 66; *Hardin* v. *Osborne,* 94 id. 571.) Was Grant, the purchaser at the as-signee's sale, a subsequent purchaser, within the meaning of the act?—that is, was he a purchaser without notice of the want of title in Beecher, or of the character in which Beecher held the legal title?

At the time of the purchase from the assignee (February 29, 1876,) the records of Cook county showed the following con-veyances of the property: First, the power of attorney from Beecher to Fish, dated January 16, 1873; second, the deed from Beecher, by Fish, to Stephen T. King, December 24, 1874; third, the deed from Beecher to Sayles and Walker, (the equitable owners,) January 12, 1875; fourth, the deed from Walker to Sayles, January 23, 1875; fifth, the deed from Sayles to King, dated May 24, 1875. These conveyances, except the power of attorney mentioned, were all made sub-sequent to October 21, 1873, when Beecher was adjudged a bankrupt, but really made and recorded before the filing of the petition by the assignee for leave to sell the land. Were they notice, or sufficient to put purchasers at the assignee's sale upon such inquiry as would be equivalent to notice, when taken in connection with the other facts and circumstances shown? They were notice that Beecher had conveyed the property. As already seen, the petition for the sale of the land in the District Court of the United States alleged that

the title of Beecher, at the time of his adjudication in bankruptcy, and which vested in the assignee, if anything vested, was a cloud merely upon the title of others, who are alleged in the petition to be owners and in possession of the premises petitioned to be sold. This land had not been scheduled as property of the bankrupt. It is manifest that inquiry would have revealed the fact that Beecher had no beneficial interest in the property whatever, but that he held the title as a mere naked trustee, only, and that he so declared in a written declaration of trust executed November 15, 1873, but not recorded.

A party purchasing at a judicial sale is chargeable with notice of such material facts as the record of the proceedings, under which he derived title, discloses, and he will be presumed to have examined the same before becoming a purchaser. (*Smith* v. *Huntoon et al.* 134 Ill. 24.) It is clear that the proceedings by the assignee show sufficient on their face, to one familiar with them, to put a purchaser on inquiry as to a bankrupt's title. The petition for the order of sale discloses that Beecher had not scheduled this land as a part of his estate. It is therein stated that the assignee "is informed and believes that said deed (Gassette to Beecher) is a cloud upon the title of a great many individual owners of different portions of the above described premises, and that said owners are farmers now in possession of portions thereof, some of whom had been in possession of said premises for many years last past, and have applied to your petitioner to sell the interest of said Beecher in said premises, and have offered to pay therefor such a sum as shall pay all the expenses attending the sale."

As before seen, the tract of land embraced in the petition contained three hundred and ten acres, which the proof shows was worth, at that time, substantially $200 an acre, and, as averred in the petition and shown by the proof, most, if not all, of it was in the actual possession of the persons claiming to be owners. We think it clear, from the evidence, that the

twenty acres involved in this case were in the possession of Warner, the purchaser from Clark, the grantor in the trust deed, and who held under the Beecher title, as before mentioned. And again, there is nothing shown to justify the sale of the bankrupt's land if it had belonged to him, except that it was a cloud upon the title of the real owners, and would bring enough to pay the expenses of the sale. It is not shown in the petition that there was necessity for the sale for the purpose of paying proved claims against the estate, or that the land belonged to the bankrupt. The petition should have shown that the assignee was acting at the request of the occupants of the land, and in their interest, to clear up a cloud on their title, and not at the instance or for the benefit of creditors. This, of itself, would be sufficient to arouse a just suspicion of infirmity in the title of the bankrupt, and should require a purchaser cognizant of it, or chargeable with notice of what it contained, to inquire into the title, and ascertain whether Beecher in fact held the title to this property. Again, the purchaser at the bankrupt sale took the title, simply, that was authorized to be sold by order of the court. The order was for the sale of whatever title or interest Beecher had in the land,—not the absolute title ; and this must have been the understanding of the assignee, of the court, and of the purchaser. It is not to be presumed that the assignee would sacrifice the bankrupt's estate by selling land worth $200 an acre for fifty cents an acre, or that the court would have approved such sale if made.

The witness Brown, who, as solicitor for the assignee, prepared the petition for the sale of the land, had, it appears, frequent conversations with the purchaser, Grant, as to the best mode of getting rid of the apparent title in Beecher, who, as we have seen, was proceeding under the Burnt Records act to have the title confirmed in him, and it can not be doubted, from the evidence, that they finally concluded that it would be to the advantage of those opposing a confirmation of the

title in Beecher, to have Beecher's interest sold by the assignee in bankruptcy. This would be entirely consistent with the fact that Herrick, in effect, ceased defending in the proceeding by Beecher under the Burnt Records act, and allowed a decree to be taken against him by default. Grant and Brown undoubtedly acted together to accomplish the same purpose. The latter testifies that he submitted the petition for the sale of the land, to Grant, and made some changes therein at his (Grant's) request or suggestion. Without going into a critical examination of the evidence, we think it reasonably certain that Grant, in making the purchase, was in fact carrying out the scheme devised to benefit those who were stated to be the owners of the land. He was the attorney, it seems, of Herrick, and it is difficult to resist the conclusion that in all this matter he had acted as Herrick's attorney or agent. If this was so, Herrick would be chargeable with notice of such facts as came to the knowledge of Grant during the course of his employment or agency.

The point is made that the petition of Beecher in the Superior Court of Cook county, and the decree therein affirming the title of the premises therein in him, must be taken as conclusive of his ownership. We are unable to concur therein. That proceeding was for the purpose of restoring lost records of deeds and establishing title as it originally was, and settled nothing as between Beecher, who, it is clearly shown, held the land as trustee for Sayles and Walker, his *cestuis que trust.* The decree in that proceeding confirmed the legal title as it was originally shown by the public records, and was not in any manner inconsistent with the fact that such title was held for the benefit of Sayles and Walker. They were not parties to that proceeding and were not bound by the decree, nor, in our judgment, is Mrs. Beebe or her personal representatives foreclosed or estopped by that decree from showing the true state and condition of the title that passed by said sale to Grant, and from Grant to Herrick.

We are of opinion that the court below erred in finding. that Edmund C. Clark had no title in the premises at the time of the execution of the trust deed to Webber, and also that Warner had no title, and that Herrick was seized of the title in fee. Herrick can not, we think, in view of the recorded title, and of the facts appearing in the record through which he obtains title, and of the facts proved, be regarded as a *bona fide* purchaser without notice. The whole proceeding to sell this land by the assignee, taken in connection with the records of the deeds from Beecher, and with the other evidence in the case, convinces us that the sale of the assignee was not a fair and honest sale of the title to this land, and that the purchaser thereat, and any one deriving title through such sale, would be chargeable with notice of such facts as would put any reasonable person upon inquiry, which, followed by the slightest diligence, would have disclosed the interest of the beneficial owners under whose title appellee claims. If Beecher owned the land, the petition for the sale of it was in itself a fraud, in that, instead of asking the sale of the title of the land, it asked for the sale of what was a mere cloud upon the title to land owned by others, and which cloud, it was represented, could be sold for enough to pay the expenses of the sale. A title thus tainted is not entitled to favorable consideration in a court of equity. We are of opinion that the court erred in not granting the prayer of the original bill foreclosing the Webber trust deed, which seems to have been made in good faith, to secure the several sums of money owing to Mrs. Beebe in her lifetime, and in not dismissing the cross-bills.

The decree of the court below will be reversed, and the cause remanded to that court for further proceedings not inconsistent with this opinion.

*Decree reversed.*

Mr. JUSTICE BAKER: I dissent from the views expressed in the opinion, and from the judgment.

18—136 ILL.

Mr. JUSTICE MAGRUDER, dissenting:

. I do not concur in the conclusion reached by this opinion nor in the reasoning by which that conclusion is supported. The children and heirs of Charles Herrick have the better title and were in possession of the property when the cross-bill was filed. The deposition of Rhodes and the admissions in the answer to the cross-bill establish such possession. The claims of appellant rest upon a purely speculative title obtained by Silas B. Gassette from one Beaubien. By deed dated November 27, 1872, Gassette executed a quit-claim deed to Thaddeus B. Beecher of lot 3, being the north half of the Laframboise Reservation, except ten acres previously conveyed by him to one Kate Beaubien. Lot 3 contains 320 acres, so that 310 acres were conveyed to Beecher. The amount paid for the conveyance to Beecher was only about $300.00, or less than $1.00 per acre. The opinion finds this land to be worth about $200.00 per acre or $62,000.00. That Gassette was willing to part with his interest for $300.00 shows how little value he placed upon it. What William C. Grant purchased at the assignee's sale was merely the Beaubien-Gassette-Beecher title, which was manifestly not worth any more than he paid for it.

Sublots 2 and 3 of lot 3 consisted of 20 acres only. They were conveyed to Beecher for less than $20.00. Sublot 3 consisting of 10 acres and another lot consisting of 5 acres with certain improvements upon them were conveyed to Charles Herrick in October, 1872, for $6000.00.

The Burnt Records petition was filed in the Superior Court by Beecher on December 21, 1872, and the decree confirming the title in. him was rendered on November 12, 1873. Certain creditors filed a petition in bankruptcy against Beecher in the U. S. District Court on October 18, 1873; he was declared a bankrupt on October 21, 1873; in November of same year Hancock was appointed assignee and became vested with the title of Beecher by conveyance of the register.

Herrick was a defendant in the Burnt Records proceeding and was represented by Grant, but there is nothing in the record to show that Grant had anything to do with the prosecution of that proceeding. On the contrary he seems to have resisted it. A default was in some way obtained against his client, and he tried to stay the proceeding by suggesting the bankruptcy of the petitioner. He was connected with the proceedings in the bankruptcy Court for the sale of Beecher's interest, and had a right to obtain in that way the baseless claim which rested as a cloud on the Herrick title. On July 1, 1875, upon application of the assignee, the U. S. District Court entered an order for the sale of the Beecher interest, which was accordingly sold to Grant; the sale was confirmed on March 17, 1876; the assignee executed a deed to Grant on April 24, 1876, which deed was recorded on April 26, 1876.

The sale made by the assignee under the orders of the Bankrupt Court, and the deed executed to carry it out, were valid. As has already been stated, there was no inadequacy in the price paid. The title of Beecher had become vested in the assignee. The U. S. Court had jurisdiction of the subject-matter and full power and authority to order the sale. Even if the petition did not allege that the sale was to be made to raise money to pay debts, such objection cannot be urged in this collateral proceeding. The court having jurisdiction of the insolvent by the institution of the bankruptcy proceeding could take such steps as it saw fit to wind up the estate and dispose of the assets.

The objection, that Beecher held the title in trust for Sayles and Walker, and therefore that the interest of Sayles and Walker was not cut off by the decree in the burnt records proceeding, amounts to nothing. There is nothing in the record to show that Grant, as purchaser at the assignee's sale, had any notice whatever of the interest of Sayles and Walker, nor were there any circumstances to put him upon inquiry as to whether or not Beecher was a mere trustee.

The idea of calling Beecher a trustee for Sayles & Walker, would appear to have been an afterthought to get rid of the title acquired by Grant at the assignee's sale. The declaration of trust, in which Beecher recites that he holds the property in trust for Sayles & Walker, was not acknowledged by Beecher until December 27, 1877, more than a year after Grant's purchase.

Selden Fish was the attorney, who filed and swore to the petition in the burnt records proceeding and managed the case from beginning to end. He paid the money to Gassette and had the deed made by Gassette to Beecher. He acted as attorney in fact for Beecher under a power of attorney executed by the latter, but not recorded. In one part of his testimony, he says that the 20 acres in controversy was a part of his fee and that he regarded himself as the owner of it, and not only so, but as the owner of the whole tract of 310 acres. If this was true, then in conducting the burnt records suit, he allowed Beecher to be held out as the owner. Indeed he swears in the petition that Beecher was the owner.

Fish also swears, that he was the attorney of both Beecher and Sayles & Walker, and that he and Sayles & Walker put the title in Beecher, because Sayles & Walker were in debt. If they put the title in Beecher to keep it away from their creditors, the trust was a fraudulent one, and a court of equity will give it no countenance. Beecher was a mere man of putty in the hands of Fish and Sayles & Walker.

But even if it be true, that Beecher was the trustee of Sayles & Walker, he allowed his name to be used in commencing the burnt records proceeding at their request and in their interest. He so swears. Fish was the attorney of Sayles & Walker, and began the burnt records proceeding in Beecher's name for them, under their directions and in their interest as well as his own. They were therefore the real parties in interest in that proceeding, and were bound by the decree entered in it. In *Bennitt* v. *Star Mining Co.* 119 Ill. 9, it was said: "Some-

times persons who are not parties to the record * * * are bound by the judgment or decree. Persons on whose behalf and under whose direction the suit is prosecuted or defended in the name of some other person fall within this category."

Men, who cover up their fraudulent transactions in another person's name, and swear that such person is the real owner of land and get the title established in him as owner, are estopped from denying such ownership when their conduct has induced third parties to invest their money in the purchase of said land and title. Grant took them at their word, that Beecher was the owner, and bought Beecher's interest at the bankrupt sale, and then made conveyances to his client and the other owners.