CHARLES E. CESSNA, Appellee, *vs.* NELLIE O'FERRALL
HULCE, Appellant.

*Opinion filed October 28, 1926.*

1. DEEDS—*burden is on holder of unrecorded deed to prove subsequent purchaser had notice.* The statute declares all deeds void as to creditors and subsequent purchasers without notice until filed for record, and the burden is upon the person alleging notice or want of consideration to prove the allegation.

2. SAME—*when statement is not sufficient to put subsequent purchaser upon inquiry.* One having notice of such facts as would put a prudent man on inquiry is chargeable with the knowledge of other facts which he might have discovered by diligent inquiry, and whatever is notice enough to excite attention and put a party upon inquiry is notice of everything to which such inquiry might have led; but a statement made by the holder of an unrecorded deed two years before she acquired such deed, and at a time when she had no interest whatever except as prospective heir, is not sufficient notice to put a subsequent purchaser upon inquiry.

3. SAME—*when unrecorded deed will not defeat rights of subsequent purchaser.* The title of a purchaser whose deed has been recorded will not be postponed to a prior unrecorded conveyance except upon clear proof of actual notice of the earlier deed or of circumstances which should have induced an honest and prudent purchaser to make inquiry, and mere suspicion will not establish an inference of fraudulent intent on the part of the vendor, but the proof must be so clear that the inference of bad faith is a necessary conclusion.

4. PRINCIPAL AND AGENT—*when principal is not bound by his agent's knowledge.* A principal is not bound by his agent's knowledge of a particular fact where it appears that the agent has an interest in concealing the fact from the principal.

5. ATTORNEY AND CLIENT—*when client cannot be charged with knowledge of his attorney.* Knowledge acquired by an attorney while engaged in his client's business must be regarded as knowledge of the client, but a client is not charged with constructive notice of information acquired by his attorney in the performance of professional services for another.

APPEAL from the Circuit Court of Vermilion county; the Hon. JOHN H. MARSHALL, Judge, presiding.

JONES, McINTIRE & JONES, for appellant.

ACTON, ACTON & SNYDER, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

This is a partition suit in which the controversy is about the title to one undivided fourth of the land. The appellee is the undisputed owner of one-half through a deed made by a master in chancery on February 27, 1917, upon the foreclosure of a mortgage on that portion of the land, and the appellant of one-fourth, and each claims title to the other fourth. The appellee's title to the one-fourth in dispute is derived through a deed of all the land by the former owner, Elizabeth O'Ferrall, to Robert L. O'Ferrall and Nellie O'Ferrall Hulce, dated March 9, 1920, recorded March 10, 1920, and a deed by Robert L. O'Ferrall to the appellee of the undivided one-fourth of the land, dated May 31, 1922, recorded July 13, 1922. On April 11, 1919, Elizabeth O'Ferrall executed a quit-claim deed to the appellant for all interest in the land, reserving a life estate, which was not recorded until July 18, 1922, when it was filed for record, and under it the appellant claims title to the undivided half of the land. Charles E. Cessna, the appellee, filed a bill for partition in the circuit court of Vermilion county, where the land is situated, seeking also to quiet the title against certain defects which do not affect the present controversy and are not involved in this appeal. The court entered a decree of partition in accordance with the prayer of the bill, and the defendant, Mrs. Hulce, appealed.

It appears from the evidence that Elizabeth O'Ferrall, who was the owner of the land, conveyed it on July 15, 1911, to Robert L. O'Ferrall and Nellie O'Ferrall Hulce, her only children, in consideration of their agreement to support her for the rest of her life out of the revenue from

the land. It was agreed that O'Ferrall was to manage the property and maintain his mother from the income or the sale of any part of the property, and at her death the property should be equally divided between the two grantees, and in case of his death the management should devolve upon Mrs. Hulce. O'Ferrall took charge of the property and received the income but neglected and refused to perform the agreement to maintain and support his mother. She therefore brought a suit for a re-conveyance of the property, which was decreed. The decree was affirmed on December 21, 1916, and she was again invested with the title through a conveyance by the master in chancery under the authority of the decree, on February 27, 1917. In the meantime O'Ferrall had mortgaged the undivided one-half of the land on February 15, 1912, to the appellee for $5000, and on February 27, 1919, a decree of foreclosure of this mortgage was entered, finding, however, that the appellee had knowledge of the rights of Mrs. O'Ferrall by reason of the agreement for her support, that she had the right to the rents of the land during her life for her support, and that the foreclosure should be subject to this right and the further right to sell any part of the land if necessary for her support. The appellee obtained title under this decree by a master in chancery's deed dated June 2, 1921. The title having been restored to Mrs. O'Ferrall by the master's deed, subject to the rights of the appellee under O'Ferrall's mortgage to him, she on April 11, 1919, after the entry of the decree foreclosing the mortgage, executed the quit-claim deed to her daughter, which has been referred to as the foundation of the appellant's title, together with an agreement reciting as the reason for the execution of the deed, among other things, the previous conveyance to her children, the suit and decree to set it aside, the mortgage given by O'Ferrall and its foreclosure, the fact that in case of her death O'Ferrall would inherit a half interest in the remaining half of the farm, and the

desire of Mrs. O'Ferrall that the appellant should not be prejudiced on account of the giving of the mortgage. On January 22, 1920, the appellant was adjudged insane and was committed to the hospital at Kankakee, where she remained until December 22, 1920. On March 9, 1920, Mrs. O'Ferrall made a deed of the land in question and her real estate in Danville to O'Ferrall and the appellant, reserving a life estate, which was recorded the next day. On the same day she executed a will devising all her property equally to her son and her daughter. On December 23, 1920, T. R. Craft, a son-in-law of O'Ferrall, who had been appointed conservator of the appellant on January 29, 1920, and had resigned, delivered to the American Bank and Trust Company, which was appointed his successor, the assets of the estate and took its receipt therefor, including the unrecorded deed from Mrs. O'Ferrall to Mrs. Hulce, dated April 11, 1919, and the agreement between the same persons bearing the same date. After her restoration the same articles were delivered to Mrs. Hulse by the American Bank and Trust Company on October 24, 1921. Mrs. O'Ferrall died on January 25, 1921, her will was admitted to probate, and on January 9, 1922, the appellant filed a claim against her estate, to which the agreement of April 11, 1919, was attached, which mentioned her unrecorded deed of the same date. On April 7, 1922, there was a hearing on this claim, which was examined by O'Ferrall, who was executor of his mother's will, and his attorney. O'Ferrall and the appellee were intimate friends from the time they were room-mates at Rush Medical College forty years before the hearing, when they were about twenty-one years old, and O'Ferrall's wife was the appellee's cousin.

It is manifest from the record of the conveyances that the appellee must be held to have acquired the title to the undivided fourth of the land by his deed from Robert L. O'Ferrall unless he is charged with notice of the previous

conveyance by Mrs. O'Ferrall to the appellant. The statute
declares all deeds void as to creditors and subsequent pur-
chasers without notice until filed for record, and the burden
of proof is upon the person alleging notice or want of con-
sideration to prove it. (*Delano* v. *Bennett,* 90 Ill. 533;
*Simmons* v. *Stum,* 101 id. 454; *Ryder* v. *Rush,* 102 id.
338; *Anthony* v. *Wheeler,* 130 id. 128; *Lowden* v. *Wil-
son,* 233 id. 340.) This rule is not denied by the appellant
but is conceded, and counsel begin their argument with the
statement that the decision of the case turns on the ques-
tion whether the appellee had notice of the unrecorded deed
of April 11, 1919, to the appellant at the time he took
the deed from O'Ferrall of the one-fourth interest. They
argue that a consideration of the evidence in the record
leads to the conclusion that the appellee had actual notice
of the deed, and they marshal in forcible array the circum-
stances tending to that conclusion. Among these are the
following: Upon the commitment of the appellant to the
hospital for the insane a conservator was appointed for her,
(the son-in-law of her brother,) who came into possession
of her property, including the unrecorded deed, and within
six weeks Mrs. O'Ferrall, who was over seventy years old,
in disregard of the feeling of fairness to her daughter,
which had in part prompted the conveyance to the appel-
lant, and of the appellant's rights under that conveyance,
executed the deed of March 9, 1920, to both her children
jointly, and at the same time made her will devising all
her property to her children jointly, thus making certain
by her own act the unfair disposition of her property she
thought the law would make and which she had previously
sought to avoid. The agreement, in connection with the
unrecorded deed, was examined by O'Ferrall and his attor-
ney in connection with the claim of the appellant against
her mother's estate, and O'Ferrall and his attorney were
thereby informed of the making of the unrecorded deed to
the appellant. In the fall of 1921 the crop on the land was

322—38

divided on O'Ferrall's direction, one-half to the appellee, one-fourth to O'Ferrall and one-fourth to the appellant, and the tenant paid the three-fourths for the appellee and O'Ferrall to O'Ferrall and has always paid whatever money was due the appellee to O'Ferrall. In July or August, 1922, the appellee and O'Ferrall came to the farm together, and O'Ferrall told the tenant that he had sold out to the appellee and the appellee was the tenant's boss. The appellee said O'Ferrall would act as his agent, and whatever he did was all right.

The evidence tends very strongly to the conclusion that O'Ferrall knew of the deed to the appellant before he executed the deed of the one-fourth interest to the appellee. It is argued that because of the long continued, intimate, friendly relations between O'Ferrall and the appellee it is not likely that O'Ferrall made a *bona fide* sale to the appellee without telling him of the unrecorded deed. The evidence may justify the conclusion that O'Ferrall betrayed either his friend or his sister, but there is no presumption that he combined with the appellee to deprive his sister of her land rather than that he imposed upon the appellee with his apparent title, and since the burden is on the appellant to prove notice of her right to the appellee, proof of knowledge by O'Ferrall is insufficient without something more than surmise that he communicated his knowledge to the appellee. Under his deed of record O'Ferrall was a co-tenant of the appellant and the appellee and as such could collect rents, and there is no evidence that he was the appellee's agent or that he received rent in any other capacity than as a co-tenant. Even if it were held that O'Ferrall was the appellee's agent in the management of the farm, yet if he sold and conveyed the farm to the appellee his interest would be to conceal the fact of the unrecorded deed, and the rule is that where it appears that the agent has an interest in concealing the fact from his principal the latter will not be bound by the agent's

knowledge. *Booker* v. *Booker*, 208 Ill. 529; *Merchants' Nat. Bank* v. *Nichols & Shepard Co.* 223 id. 41.

The evidence fails to show that the appellee had actual knowledge of the unrecorded deed, but it is argued that actual notice is not necessary if he had knowledge of such facts and circumstances as charged him with constructive notice. It is true that one having notice of such facts as would put a prudent man on inquiry is chargeable with the knowledge of other facts which he might have discovered by diligent inquiry. Whatever is notice enough to excite attention, put the party on his guard and call for inquiry is notice of everything to which such inquiry might have led. (*Blake* v. *Blake*, 260 Ill. 70; *Chicago and Eastern Illinois Railroad Co.* v. *Wright*, 153 id. 307; *Anthony* v. *Wheeler, supra.*) It is contended that the appellee had direct notice from the appellant of her claim to the undivided half interest in the land through a conversation with her. The appellee was acquainted with the former conveyance of the mother to her son and daughter, and during the pendency of the appeal from the decree of the circuit court, in a conversation with the appellant about the foreclosure of his mortgage, she said to him, "You can take away half of this farm but you will leave me my half to support my mother with." This was after the decree which set aside the deed to the appellant and her brother, and at the time she had no title and no claim to a half or any other interest in the farm and by her statement she made no claim to any interest. The time was 1916, before the affirmance of the decree and more than two years before the deed made afterward to the appellant which was not recorded. Her statement, though she used the expression "my half," therefore referred to no legal or equitable claim, and not only gave no notice but was not of a character to put the appellee on inquiry.

It is further contended by the appellant that the appellee is charged with notice of the unrecorded deed by reason

of the knowledge of his attorney. Knowledge acquired by an attorney while engaged in his client's business must be regarded as the knowledge of the client. (*Webber* v. *Clark,* 136 Ill. 256; *Smith* v. *Ayer,* 101 U. S. 320.) One of the attorneys who filed the bill in this case was the attorney of T. R. Craft as conservator of the appellant, and of the American Bank and Trust Company, his successor. Craft's report to the court upon his resignation as conservator was sworn to before this attorney, and to it was attached the receipt for the assets of the estate, including the unrecorded deed. The deed of March 9, 1920, from Mrs. O'Ferrall to the appellant and Robert L. O'Ferrall was witnessesd by the same attorney and acknowledged before him. He was also attorney for the American Bank and Trust Company as conservator, which held the unrecorded deed and turned it over with the rest of her property to the appellant when she returned from Kankakee. He was also attorney for O'Ferrall as executor of his mother's will and examined the claim of the appellant against her estate, to which was attached the agreement between her and her mother reciting the execution of the unrecorded deed. He was one of the appellee's solicitors in the suit for the foreclosure of the mortgage upon the undivided half of this land, in which a decree was rendered in 1919, and the deed of May 31, 1922, to the appellee for the one-fourth of the land in controversy was acknowledged before his brother. There is no evidence that the attorney had any personal connection with or knowledge of the deed or the transaction out of which it resulted.

A client is not charged with constructive notice of information acquired by his attorney in the performance of professional services for another. (*Campbell* v. *Benjamin,* 69 Ill. 244; *Herrington* v. *McCollum,* 73 id. 476; *Snyder* v. *Partridge,* 138 id. 173.) The evidence does not disclose the employment of any attorney by the appellee in connection with the acquisition of the title of O'Ferrall, or any

information received which imposed upon him the duty of inquiry outside the record as to the title.

The title of a purchaser whose deed has been recorded will not be postponed to a prior unrecorded conveyance except upon clear proof of actual notice of the earlier deed or of circumstances which should have induced an honest and prudent purchaser to make inquiry which would have disclosed the truth. Mere suspicion will not establish an inference of fraudulent intent. The proof must be so clear that the inference of bad faith is a necessary conclusion.

The decree was in accordance with the evidence, and it is affirmed.                    *Decree affirmed.*