DOUGLAS SIMPSON ET AL.

v.

JOHN MCPHAIL.

1. SURETY—SUBROGATION.—A surety who pays the debt of his principal acquires a right of action against his principal and may enforce it at law, and may in equity be subrogated to the rights of the creditor in any securities held by the creditor against the principal, including the lien of a judgment in favor of the creditor against the principal and surety upon the original debt.

2. SAME—REMEDY.—While the surety may thus have equitable relief, he is not absolved from the operation of the rules which are applied to other suitors, and where a surety who has paid the debt does no act before his claim is barred at law by the Statute of Limitations, manifesting an intention to put himself in the place of the creditor and subrogate himself to the creditor's rights, equity will not subrogate him to those rights.

3. LIMITATION.—A delay for five years within which the surety must have sued at law will be a complete bar in equity.

ERROR to the Circuit Court of Montgomery county; the Hon. J. J. PHILLIPS, Judge, presiding. Opinion filed December 4, 1885.

Messrs. MILLER & MCDAVID, for plaintiffs in error.

Mr. A. N. KINGSBURY, for defendant in error.

WALL, P. J. This was a bill in chancery filed by defendant in error against plaintiff in error, in the Circuit Court of Montgomery county, on the 13th day of January, 1883. The bill alleged that on the 18th of March, 1864, Davis, Haskell & Co. recovered judgment in said circuit court against Spartan Gresham and John Simpson as principals, and defendant in error as their surety upon a promissory note for $1,250.27; that said Gresham and Simpson were insolvent when the judgment was rendered; that said Simpson died December 13, 1864, leaving his widow and the plaintiffs in error, his children, and being seized of a tract of land containing forty acres, which land, describing it, was the homestead of said Simpson, and

had been so occupied by his widow and children since his death; that the widow had since died and the youngest child had reached the age of twenty-one years; that the land, at the time of Simpson's death, was not worth over $1,000, but had become of more value at the time the bill was filed; that on the 20th day of December, 1864, the defendant in error paid the judgment, interest and cost in full, which amount had never been repaid to him, and prayed that the complainant might be subrogated to the rights of the plaintiff in the judgment, and that he might have a lien on the land for the payment of the same, etc., etc.

The answer admitted the judgment but not the payment thereof; the death of Simpson leaving widow and children, and the land; the subsequent death of the widow; that the youngest child had attained the age of twenty-one years; relies upon the Statute of Limitations, two years, five years and seven years, and denies that complainant is entitled to relief as prayed in the bill.

The court, upon a hearing, entered a decree reviving the judgment for the use of the complainant, subrogating him to the rights of the plaintiff therein, and ordering a sale of the property in payment of the sum so found due for the judgment, interest, and cost. Error is assigned upon this decree.

A surety, who pays the debt of his principal, acquires a right of action against his principal, and may enforce it by the appropriate remedy at law. He may also invoke the aid of a court of equity, and be subrogated to the right of the creditor in any securities held by him against the principal, including the lien of a judgment in favor of the creditor against the principal and surety upon the original debt.

By the mere fact of payment the surety becomes the equitable assignee of all collateral securities, and, when necessary for his protection, of the principal undertaking itself. 3 Pomeroy's Eq. Jur. section 1419 and note.

While the surety may thus have equitable relief, he is not absolved from the operation of the rules which are applied as to other suitors. It is one of the usual and ordinary conditions

of relief administered in a court of equity that those who seek its aid shall have been diligent in the assertion and prosecution of their demands, and it has therefore become a settled doctrine that where a surety who has paid the debt does no act before his claim is barred at law by the Statute of Limitations, manifesting an intention to put himself in the place of the creditor, and thereby subrogate himself to the creditor's rights, equity will not subrogate him to those rights. It is a general rule also that equity follows the law, and when in such cases a right does not exist at law, a court of chancery will not relieve. Subrogation, the creature of equity, will not be enforced at the expense of a legal right. Brandt on Suretyship, Sec. 267; Sheldon on Subrogation, Sec. 110; Rittenhouse v. Livering, 6 Watts & Serg. 190.

In this case the creditor obtained a judgment which was not a lien upon the property in question, because it was the debtor's homestead. Green v. Marks, 25 Ill. 221; Bliss v. Clark, 39 Ill. 590; Hartwell v. McDonald, 69 Ill. 293.

In the settlement of the estate in the probate court, this judgment would have rated no higher than a claim by simple contract. Turney v. Gates, 12 Ill. 141.

Had the principal not died the surety would have been barred of his remedy at law in five years from the payment of the debt, and he was bound to probate his claim within two years from the granting of letters of administration in order to participate in the funds inventoried; and yet he comes in a court of equity asking relief after the lapse of more than nineteen years, during which time no steps have been taken manifesting his intention to put himself in the place of the creditor, or to enforce his claim in any manner against the estate of his principal.

Not only was his right of action barred at law, but the right of the judgment creditor to revive the judgment, had it not been paid, was also barred. Gibbons v. Goodrich, 3 Bradwell, 590.

It is insisted, however, by defendant in error, that as the Statute of Limitations, sixteen years, is not set up in the answer, this last objection can not be made.

Such is the general rule of chancery practice as held in School Trustees v. Wright, 12 Ill. 432. The reason given in that case for applying the rule was, that complainant ought to have notice of the proposed defense so that he might amend his bill by inserting allegations accounting for the delay. But in Hall v. Fullerton, 69 Ill. 451, the court held the rule was not applicable in a case where the complainant undertook in advance of the defense to excuse himself for the apparent laches. See, also, Williams v. Rhodes, 81 Ill. 571.

In this case the bill gives in advance the reason for the delay, viz.: that the judgment could not be enforced by sale on execution so long as the land was occupied as a homestead by the widow and children, the youngest not being yet twenty-one years of age ; and upon the principle of the cases last cited it would be competent to consider as laches the delay for the period within which the judgment, if not paid, might have been revived, or sued upon in an action of debt, and hence the claim must be deemed stale, and therefore not entitled to favorable notice in a court of equity.

It is not necessary, however, to depend upon this consideration, as in our opinion the delay for five years, within which the surety must have sued at law, and which is specifically set up as a defense in the answer, is a complete bar. Equity acts in such cases upon analogy to the law. Pomeroy's Eq. Jur., Vol. 1, Sec. 418–19 ; Story's Eq. Jur., Vol. 2, Sec. 1520.

Statutes of Limitation are based upon wise experience, and upon settled grounds of public policy, which are well recognized in both jurisdictions ; and it is not material to inquire whether a suit would have availed to collect the debt. The delay is held conclusive against the right.

The decree of the circuit court will be reversed and the cause remanded with directions to dismiss the bill at the cost of the complainant therein.

Reversed and remanded.