MARY E. CORYELL

v.

GEORGE C. KLEHM et al.

*Filed at Ottawa October 11, 1895.*

1. EQUITY—*has jurisdiction of bill to establish trust and compel conveyance.* Equity has jurisdiction of a bill to establish a trust in certain defendants and secure conveyances from them, and to obtain a deed from a trustee in a trust deed on the theory that the complainant has become both beneficiary and owner of the equity.

2. SAME—*what is want of equity in a bill.* Want of equity in a bill does not appear except where no discovery or proof called for by or founded upon the allegations could make the subject matter of the suit proper for equitable cognizance.

3. PLEADING—*when the question of laches may be raised on demurrer to bill.* Where a bill in chancery states on its face the causes of and excuses for the delay in bringing the action, the question of *laches* may be raised by demurrer, and need not be made by plea or answer.

4. SAME—*in equity—effect of pleading fact upon information and belief.* A direct and positive statement of a fact, with the additional words, "as your oratrix is informed and believes," is an affirmance of the fact, and not merely an averment of the complainant's confidence in the truth of the representations.

5. SAME—*sufficiency of allegation of deed of assignee in bankruptcy.* An allegation that a deed was executed by the grantor as "assignee in bankruptcy" and "in due form of law," sufficiently shows that all the prerequisites necessary to pass to the grantee all the title and interest of the assignee were complied with.

6. LACHES—*what delay will not bar beneficial owner from claiming deed.* The beneficiary in a trust is not barred by *laches* from claiming a deed, as against adverse claimants, from the holder of the legal title, although eight years elapsed after the creation of the trust, where she files her bill in a little over a year after notice of adverse claims, during which year she was trying to get the deed by negotiation.

7. SAME—*basis of doctrine of laches in equity.* A court of equity applies the doctrine of *laches* in denial of relief only where, from all the circumstances, to grant the relief to which the complainant would otherwise be entitled will presumptively be inequitable and unjust, because of the delay.

8. BANKRUPTCY—*assignee in, takes subject to equities.* An assignee in bankruptcy takes the estate of the bankrupt as a volunteer, sub-

ject to all the liens, incumbrances and equities existing against it in the hands of the bankrupt.

9. SAME—*construction of Federal statute as to property held by bankrupt in trust.* It would seem that express trusts only, and not those created by mere operation of law, are within the Federal statute which provides that no property held by the bankrupt in trust shall pass by the assignment in bankruptcy. .

10. NOTICE—*to agent or attorney is notice to principal.* Notice to an agent touching the subject matter of his agency is notice to his principal, and notice to an attorney is notice to his client.

11. SAME—*to cestui que trust is notice to trustee.* A naked trustee takes subject to equities of which his *cestui que trust* has notice.

12. LIS PENDENS—*is notice to all the world of complainant's equities.* A *lis pendens* is notice to all the world of the equities of the complainant in the subject matter of the suit.

13. LIMITATIONS—*when proceedings of an assignee in bankruptcy are not adverse to a beneficial owner.* The equity of the beneficiary in a resulting trust in lands of which the legal title was held by one who became a bankrupt, is not adverse to the assignee in bankruptcy, within the Federal statute limiting to two years a suit between such an assignee and one claiming an adverse interest, where the bankrupt always recognized the trust, and the assignee, in obtaining leave to sell the property, states facts showing his proceeding was not adverse to the beneficiary.

14. SAME—*construction of limitation in Federal Bankruptcy act—what is within said limitation and what is not.* The Federal statute limiting to two years suits involving adverse interests in property transferable to an assignee in bankruptcy, does not apply to property sold by the assignee before such statute commences to run, but the interest must become adverse in the assignee.

15. A suit based on the interest of the beneficiary in a resulting trust vested in such beneficiary's assignee in bankruptcy, as against a title derived by absolute deed from the holder of the legal title made before the assignment, is within said Federal statute of limitations of two years.

16. Said statute does not, however, apply to an equitable estate which passed out of the bankrupt more than three years before he was adjudged such, nor to the equity covered by a trust deed of such equitable estate made long prior to such adjudication.

17. TRUSTS—*what interest will entitle a beneficiary to a conveyance of the legal title.* The beneficiary under a trust deed made upon the equitable title of a beneficiary in a resulting trust is not entitled to a conveyance of the legal title to himself, but such relief can be asked only by the absolute owner of the equitable title.

18. But such beneficiary, upon becoming the owner of the equity of redemption through the assignee in bankruptcy of the grantor

in the trust deed, becomes entitled to a conveyance of the legal title to the whole equitable estate.

19. MORTGAGES—*merger of equity of redemption in title acquired by mortgage—mortgagee's interest regarded.*   A mortgage of the equitable interest of the beneficiary in a resulting trust in land, and the equity of redemption of such beneficiary, do not merge upon the acquirement of the latter interest by the mortgagee, where such merger is not for the mortgagee's interest.

20. MERGER—*doctrine of merger applied to different equitable interests and the legal title.*   The uniting in one person of the legal title to the equitable estate arising under a resulting trust, the equitable interest created therein by a trust deed based thereon, and the equity of redemption from such trust deed, does not merge the legal title and equity under the trust deed in the equity of redemption, but the other interests are merged in the legal title, which is the greater of the three.

APPEAL from the Superior Court of Cook county; the Hon. W. G. EWING, Judge, presiding.

This is a suit in equity, to declare and establish a trust and for other relief, prosecuted in the Superior Court of Cook county, by Mary E. Coryell, complainant below and appellant here, against George C. Klehm, Esther Klehm, Charles Harms, Matilda Harms, Antonia Harms and George Chambers, defendants below and appellees here. The original bill was filed on March 24, 1886.   On May 29, 1893, the amended bill was filed, and on October 18, 1893, by leave of court, the complainant filed a supplemental bill, joining as a defendant one Antonia Harms, who, it is alleged, acquired an interest in the premises in question from the defendant Klehm since the filing of the original bill.   To this amended bill and the supplemental bill the defendants filed general demurrers, which, on January 3, 1895, were sustained by the Superior Court, and complainant electing to stand by her amended and supplemental bills, the same were dismissed for want of equity.   From that decree the complainant prosecutes this appeal, the only question in the record being as to the sufficiency of the amended and supplemental bills,

the sufficiency of the latter depending entirely on that of the former.

The substantial facts alleged in the bill, briefly stated, are as follows: On November 27, 1872, Silas B. Gassette conveyed to one Thaddeus B. Beecher the premises known as lot 3 in LaFrambois' Reserve, said lot 3 consisting of three hundred and ten acres of land, of which the premises in question composed twenty acres. On December 21, 1872, a burnt record proceeding was begun in the Superior Court of Cook county, to confirm title in and to said premises, and such proceedings were had therein that on November 12, 1873, the title to the premises in question was confirmed in said Beecher. One month prior to · such confirmation, namely, on October 12, 1873, Beecher was adjudged a bankrupt and Bradford Hancock was appointed his assignee. The premises in question were not scheduled in the bankruptcy proceedings, nor was any action in reference thereto taken by the assignee until on or about the first day of July, 1875. In the meantime, on January 12, 1875, Beecher (the bankrupt) executed a deed of the premises in controversy to John E. Sayles and Albert H. Walker, said deed being one of special warranty, and was recorded January 18, 1875. On January 23, 1875, by deed recorded same day, Walker and wife conveyed to said Sayles, and Sayles, by trust deed recorded March 24, 1875, conveyed the premises in trust to defendant Chambers, by the usual form of trust deed, to secure $3000 loaned said Sayles by the complainant. At the time said loan was made it appeared by the abstract of title presented to complainant's solicitors that Sayles was the owner of said premises in fee simple. Complainant has learned since making her said loan and since October 25, 1880, that the defendant Harms, with other persons, has contrived to cloud complainant's title by having executed by Bradford Hancock, as assignee in bankruptcy of Thaddeus B. Beecher, and Wilber F. Chatfield, a certain deed dated April 24, 1876, to one William C. Grant, purporting

to state that on July 1, 1875, (nearly four months after said trust deed was recorded,) said Bradford Hancock, assignee of Beecher, filed a petition in the United States District Court for the sale of said premises as such assignee, etc. Said petition stated that Beecher appeared to have some interest in said lot 3, embracing the three hundred and ten acres, by virtue of said deed from Gassette, but that no mention whatever was made of said premises in said Beecher's schedule; that he, said assignee, was informed and believed that the said deed was a cloud upon the title of a large number of individual owners of different portions of said three hundred and ten acres; that said owners were farmers in possession of portions of the premises, who had applied to said Hancock to advertise and sell the interest of said Beecher in said premises, and offered to pay therefor such a sum as would pay all the expenses attending the sale. Pursuant to said petition the said assignee procured an order for the sale of his interest in said premises, caused publication of notice to be made, and on February 29, 1876, sold said premises to William C. Grant for $160, being a little more than fifty cents per acre. In the deed from said assignee to Grant said assignee purports to convey to said Grant all the right, title, interest, claim and demand of said Beecher which said Beecher had on October 18, 1873, and also all right of said assignee, subject to all unpaid taxes and to all liens and encumbrances. Grant, it is alleged in the bill, represented defendants Klehm and Harms, and conveyed to Klehm on January 26, 1883, which title, it is alleged in the bill, was so taken by Klehm and held by him in trust for Harms.

On August 20, 1878, Sayles, the grantor in the trust deed to Chambers, (which trust deed was given to secure the complainant's loan,) was adjudged a bankrupt, and on May 26, 1879, Robert E. Jenkins was appointed his assignee. On October 20, 1880, Jenkins sold and conveyed the premises in question to Henry H. Brown, and on Feb-

ruary 11, 1885, Brown and wife executed a deed to the complainant.

It is alleged in the bill that the consideration for the conveyance from Gassette to Beecher was furnished by Sayles and Walker, and that Beecher merely held the title in trust for them; that Beecher's assignee took only the apparent title to the premises; that in equity the premises then belonged to Sayles and Walker, under whom complainant claims, and that Grant, and the defendants claiming under him, had notice that the said assignee was not vested with the real ownership of said premises, and were instrumental in procuring said sale by said Hancock, which was made upon information furnished by Grant, and which, it is alleged, was untrue. The bill further states that the defendants Esther Klehm and Matilda Harms claim an inchoate dower right in said premises as the wives of defendants George C. Klehm and Henry Harms.

The prayer of the bill is, that the defendant George C. Klehm be required to release and convey to the complainant all right, title and interest in the premises acquired through the deed from Beecher's assignee, and answer for the rents and profits; that Chambers, the trustee in the trust deed securing complainant's loan, be required to quit-claim to complainant any title or interest which he may still hold under said trust deed; that all the parties be restrained from asserting any claim of title or interest in said premises; that complainant be put in possession thereof, and for other and further relief.

HARBERT & DALEY, for appellant:

Neither Sayles and Walker nor the plaintiff could maintain ejectment. *Walker* v. *Bogue,* 31 Ill. 464; *Mitchell* v. *Shortt,* 113 id. 251.

By appellant's purchase of the equity of redemption from the assignee of Sayles the two equities would merge or not, according to whether it was her intention, and

would be to her interest, that such merger should take place. Jones on Mortgages, sec. 873; *Watson* v. *Gardner,* 119 Ill. 320; *Lowman* v. *Lowman,* 118 id. 582; *Richardson* v. *Hockenhull,* 85 id. 124.

Where the Statute of Limitations applies to a life estate but not to the remainder, and the two interests become vested in the same person, there is no merger, the equities requiring that there should be none. *Talcott* v. *Draper,* 61 Ill. 56; *Meacham* v. *Steele,* 93 id. 135.

As the legal title is the greater, Sayles' equity of redemption would become merged in the legal title, and not the latter in the equity of redemption. *Kahn* v. *Hoffman,* 45 Ark. 383; *Dexter* v. *Harris,* 2 Mason, 531; Jones on Mortgages, sec. 873.

This identical question was decided by this court in the case of *Burton* v. *Perry,* 146 Ill. 126.

Complainant is entitled to a conveyance of the title vested in Chambers, the trustee in the trust deed. (*Meacham* v. *Steele,* 93 Ill. 135.) That title can only be vested in her by a conveyance. *Kirkland* v. *Cox,* 94 Ill. 400.

H. S. MECARTNEY, for appellees:

Cases are common where parties seeking the aid of a court of equity to enable them to redeem lands from sales under mortgages, from deeds absolute in form, to establish trusts direct and constructive, etc., have been held to have been barred by delays of from three to eight years. *Follansbee* v. *Kilbreth,* 17 Ill. 522; *Insurance Co.* v. *White,* 106 id. 67; *Dempster* v. *West,* 69 id. 614; *Hoyt* v. *Pawtucket Institution,* 110 id. 390; *Brink* v. *Steadman,* 70 id. 241.

While the assignee in bankruptcy of Beecher took no greater rights in the property than Beecher had, as against appellant, yet a purchaser from such assignee, with no notice of the alleged resulting trust, took the title unencumbered therewith. *Holbrook* v. *Dickenson,* 56 Ill. 497; *Burt* v. *Paper Co.* 86 id. 66.

Appellant is doubly barred by the two years limitations: First, by the limitations arising under Beecher's bankruptcy; and second, by those arising under Sayles'. *Greene* v. *Taylor*, 132 U. S. 415 ; *Gifford* v. *Helms*, 98 id. 248; *Bank* v. *Jenkins*, 104 Ill. 143 ; *Bailey* v. *Glover*, 21 Wall. 346; *Cleveland* v. *Boerum*, 24 N. Y. 613.

The purchaser is chargeable with notice of everything that appears on the face of the deeds in his chain of title, but is not bound to inquire into deeds made by strangers thereto. 16 Am. & Eng. Ency. of Law, 800, and cases cited; *Hazlett* v. *Sinclair*, 76 Ind. 488 ; *Burke* v. *Beveridge*, 15 Minn. 205 ; *Burch* v. *Carter*, 44 Ala. 115 ; *Tydings* v. *Pitcher*, 82 Mo. 379.

Mr. JUSTICE BAKER delivered the opinion of the court:

In *Webber* v. *Clark*, 136 Ill. 256, the controversy was in regard to another portion of the tract of land known as lot 3, containing three hundred and ten acres, in LaFrambois' Reserve. The conclusion there was, that Beecher held the property in trust for Sayles and Walker; that Hancock, the assignee in bankruptcy of Beecher, took subject to their equitable interests, and that Grant, the purchaser at the assignee's sale, took with notice of and subject to their equities. In this case, the equities in favor of Mary E. Coryell, the appellant, are, or at all events at one time were, in one respect stronger than were the equities of the complainant and appellant in that case. There, some of the defendants claimed an interest or title existing prior to the sale made by the assignee, and sought to impeach the validity of the burnt record proceeding for fraud, while here the titles and claims of the defendants are based on the conveyance made by the assignee, and on that alone. But, on the other hand, the right of the now appellant to enforce her equities at this time and in this suit is beset by complications that were not found in the other litigation, and that afford ground for grave consideration.

Some of the defendants to the bill are in possession of the twenty acres of land in controversy, but since the principal objects of the bill are to establish a trust in Harms and Klehm and secure conveyances from them, and to obtain a deed from Chambers, the trustee in the trust deed, on the theory that appellant, *cestui que trust* under said trust deed, is now the owner of the equity of redemption, there can be no doubt of the jurisdiction of a court of chancery to entertain the bill. Indeed, the legal title to the premises being vested in certain of the defendants, it is manifest that appellant has no remedy at law, by action of ejectment or otherwise.

It is claimed that the *laches* of appellant has barred her from seeking relief in equity. Whatever may be the rule in other jurisdictions, it has long been the general rule in this State that a defendant, in order to avail himself of the defense of *laches*, must set up such defense by plea or answer, so as to afford the complainant opportunity to amend the bill by inserting allegations accounting for the delay. (*School Trustees* v. *Wright*, 12 Ill. 432; *Zeigler* v. *Hughes*, 55 id. 288; *O'Halloran* v. *Fitzgerald*, 71 id. 53; *Darst* v. *Murphy*, 119 id. 343; *Dawson* v. *Vickery*, 150 id. 398.) In *Hall* v. *Fullerton*, 69 Ill. 448, it is held that this rule will not be extended to a case where the bill undertakes to account for the delay in bringing suit, and the proofs do not support the grounds of excuse that are alleged. It is there said that the reason of the rule does not apply to such a case. And *Williams* v. *Rhodes*, 81 Ill. 571, and *Simpson* v. *McPhail*, 17 Ill. App. 499, are of like tenor. It is to be remarked that all of the cases we have thus far mentioned are cases in which there were answers to the bills, and the question of a defense growing out of the delay of the complainant arose at the hearing.

We find no case in which it has been directly held in this State that the defense of *laches* cannot be availed of by a demurrer when the *laches* to bar the suit appears in the bill itself. In *Beach* v. *Shaw*, 57 Ill. 17, the defend-

ant did not rely, in his answer, on *laches,* and the court followed the general rule above stated, but took occasion to say that it was not altogether satisfied with such rule when applied to cases in which the *laches* appears upon the face of the bill. And in *Harris* v. *Cornell,* 80 Ill. 54, the circuit court had dismissed the bill on demurrer, and in the argument in this court it was claimed the complainants had been guilty of *laches,* and this court, though it said "that question is usually presented by answer," yet proceeded to show that the defense of *laches* was not applicable to the case, and reversed the decree and remanded the cause.

Upon consideration of all the cases in this State, this much is clear: That while the general rule is that the defense of *laches* must be made by plea or answer, yet such rule does not apply when the bill already states the causes of and excuses for delay. In the case at bar, as in *Hall* v. *Fullerton, supra,* and in *Williams* v. *Rhodes, supra,* the complainant undertakes to account for her delay in bringing suit, and makes in that behalf numerous allegations, and there is, therefore, no occasion for either plea or answer setting up *laches.* The truth of these matters of excuse is admitted by the demurrer. Why, then, any necessity for the delay, trouble and expense of proving such matters by testimony? Why may not the insufficiency of the excuses for delay be urged on demurrer? Here, the whole issue as to *laches* turns upon the legal sufficiency, from the standpoint of a court of equity, of these matters pleaded by way of excuse for delay. It is said in *Hall* v. *Fullerton* that the general rule above stated is one not to be extended to a case where the reason for the rule does not apply, and the reason for the rule has no more application in this case than in that.

The doctrine in equity in regard to the statutes of limitation is, that such statutes may be taken advantage of by demurrer where the bar appears on the face of the bill, unless equitable grounds in avoidance of the bar are

alleged. (*Henry County* v. *Winnebago Swamp Drainage Co.* 52 Ill. 299; *Ilett* v. *Collins*, 103 id. 74; *Bell* v. *Johnson*, 111 id. 374; *Bonney* v. *Stoughton*, 18 Ill. App. 562.) And the course we have indicated is in analogy to that doctrine, but necessarily modified so as to conform to the rule in respect to the defense of *laches*, as announced in former decisions.

At the time appellant loaned her money and took the mortgage security, in March, 1875, the abstract of title was examined by her attorneys, and it showed that Sayles was the owner of the premises. On April 24, 1876, Hancock, the assignee in bankruptcy of Beecher, deeded to Grant, but she did not learn of the bankruptcy of Beecher and the proceedings that resulted in said deed until after October 25, 1880. Said deed was not in the chain of title upon which the trust deed to Chambers, her trustee, was based, Beecher having made a deed to Sayles and Walker on January 12, 1875. When she learned of the bankruptcy proceedings and the deed to Grant, she applied to Grant to have him release to her the part of the premises in which she was interested, and proposed to pay him his expenses and proper charges in the matter, and for some time expected him to accept her proposition, and was prepared to arrange the matter with him accordingly. Grant afterwards advised her that he was under some obligations to other parties, as attorney, trustee or otherwise. From the time she first had notice of the bankruptcy of Beecher and the deed to Grant, until February 11, 1885,—a little more than a year before the filing of her bill,—she was not the owner of the equitable title that had been vested in Sayles and Walker, but that title belonged to Henry H. Brown, to whom it had been conveyed by Jenkins, assignee in bankruptcy of Sayles. That equitable title and interest, however, were under mortgage to Chambers, as trustee, to secure the $3000 that she had loaned to Sayles. She filed her bill on March 26, 1886, having then recently learned

that Grant had, by a quit-claim deed, conveyed the premises to Klehm on January 26, 1883.

These statements of fact made in the bill do not show a strong case for appellant in explanation and excuse for not sooner bringing suit. We think, however, that when they are considered in the light of the complications in and by which her interest in and lien upon the premises were involved, and also in the light of the facts alleged in regard to notice to appellees of the Walker and Sayles equity, which are hereinafter separately considered, the conclusion should not be, upon this demurrer to the bill, that she has delayed asserting her claim for so unreasonable a length of time, and under such circumstances, as should preclude her from obtaining relief,— and especially so, as it does not appear that the defense of *laches* was either pointed out in the demurrer or relied upon in the argument thereof in the court below. If there are equities in appellees requiring a court of equity to contract the limits prescribed by statute for barring the complainant, they do not appear in this record A court of equity applies the doctrine of *laches* in denial of relief only where, from all the circumstances, to grant the relief to which the complainant would otherwise be entitled will, presumptively, be inequitable and unjust, because of the delay. (*Stiger* v. *Bent,* 111 Ill. 328.) And a demurrer for want of equity cannot be sustained, unless the court is satisfied that no discovery or proof, properly called for by or founded upon the allegations in the bill, can make the subject matter of the suit a proper case for equitable cognizance. *Bleeker* v. *Bingham,* 3 Paige, 246; 1 Johns. Cases, 427.

In order to entitle appellant to relief she must show notice of the parol trust or equity to each of the parties through whom the title passed, from Beecher down. It is urged that the statements of notice found in the bill are insufficient.

It appears from the bill that Beecher always recognized the title of Sayles and Walker to the property, and that neither the schedule in bankruptcy of said Beecher nor the schedule of Chatfield and Beecher made any mention whatever of any interest in the premises. Hancock, the assignee in bankruptcy of Beecher, took the estate of the bankrupt as a volunteer, and subject to all the liens, encumbrances and equities existing against it in the hands of the bankrupt.

The bill contains specific allegations showing the manner in which Beecher acquired title and held the same in trust for Sayles and Walker, who furnished and paid the purchase money for the land. The bill then states: "That the said William C. Grant, before and at the time of his said pretended purchase from said Bradford Hancock, as assignee, had notice that said Thaddeus B. Beecher had not, at the institution of said bankruptcy proceedings against him, any actual interest in the aforesaid property of your oratrix, save as trustee as aforesaid." The bill further charges "that the said Grant, in making said purchase, was acting as the agent of said Charles Harms, and that the said conveyance to said Klehm was made, and the pretended title so acquired by him was held, in trust for said Charles Harms; that said Grant was the solicitor for said Harms, * * * and as agent and attorney for said Harms was instrumental in procuring the sale by said assignee." And also charges that "said Klehm, in receiving said deed from said Grant, had notice that said Grant was not a *bona fide* purchaser," and that he, "in taking said deed, was chargeable with notice of the rights and equities of Sayles and Walker, and of the rights and equities of your oratrix."

Notice to an agent touching the subject matter of his agency is notice to his principal, and notice to an attorney is notice to his client. Klehm was a mere naked trustee, and his *cestui que trust* had notice; and, moreover, it appears that when he took the deed from Grant he had

notice of the defect in the title, and that said Grant was not a *bona fide* purchaser, and that the title conveyed was chargeable with notice of the rights and equities here in question.   The conveyance of Klehm to Antonia Harms was subsequent to the commencement of suit and the service of process, and a *lis pendens* is notice to all the world of the equities of the complainant in the subject matter of the suit.   We think that notice of the equities of appellant sufficiently appears upon the face of the bill.

It is claimed that the title acquired under Hancock, assignee of Beecher, was adverse to the equitable title claimed by Sayles and the mortgage interest claimed by appellant thereunder, and that therefore said equitable title and said mortgage interest are barred by the two years' limitation contained in the Federal Bankrupt law. Section 5057 of the Revised Statutes of the United States (2d ed. p. 975) reads as follows:   "No suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee."   In order to bring the case within the statute the suit must involve "property or rights of property transferable to or vested in such assignee," and the interest claimed must be "adverse" as between the assignee and other person or persons.

Appellant insists that this litigation does not relate to property or rights of property transferable to or vested in the assignee, and relies on section 5053 of the Revised Statutes of the United States, which provided that "no property held by the bankrupt in trust shall pass by the assignment."   It is urged that the bill shows an express trust, as well as a resulting trust.   The only suggestion of an express trust that we find in the bill is contained in these statements:   "That the said Beecher, as your

oratrix is informed and believes, had, in fact, by some writing in due form, recognized and confirmed the right of said Sayles and Walker in and to said premises before the petition in bankruptcy was filed by or against said Beecher; that for some cause to your oratrix unknown such writing or document seems not to have been placed on record." It here appears that the facts to constitute an express trust are not within the knowledge of the appellant, and she, therefore, is not within the general rule that requires a complainant to state them positively. (*Campbell* v. *Paris and Decatur Railroad Co.* 71 Ill. 611.) Where the allegations are made in the form of direct and positive statements of facts, with the additional words, "as your oratrix is informed and believes," it would seem that there is more than a simple averment of the complainant's confidence in the truth of the representations, and they may be regarded as averments of the facts together with a statement of the source from which knowledge of those facts was derived. (*Lucas* v. *Oliver*, 34 Ala. 626.) We are inclined to limit, rather than either extend or strictly adhere to, the technical rules of pleading, and especially so in the absence of a special demurrer. If answer had been filed to the bill and issues formed, there can be no question but that complainant might properly have introduced in evidence, under the frame of her bill, a written acknowledgment of trust signed by Beecher prior to his bankruptcy.

It is further insisted that whether the trust was an express trust or a trust arising from implication of law, there was, in either event, a trust estate, and it was within the operation of the statute and did not pass by the assignment, and that therefore no title or interest passed by the assignee's deed to Grant upon which the limitation law of two years could operate. No authority is cited to show that a constructive trust is within the Federal statute which provides that no property held by the bankrupt in trust shall pass by the assignment made

to the assignee in bankruptcy proceedings. It would seem that the rule is, that express trusts only, and not those created by mere operation of law, are within that statute. *Hosmer* v. *Jewett*, 6 Benedict, 208.

But, be it as it may with respect to this section 5053 of the statute, the question arises, did the equity upon which the claim of appellant is based ever become adverse as between the holder of that equity and the assignee of Beecher? As we have already seen, Beecher always recognized and admitted the equitable title of Sayles and Walker to the property, and it was not scheduled as a part of the bankrupt's property, and the assignee took it, if at all, as a volunteer, and subject to all the liens, incumbrances and equities existing against or in the same in the hands of the bankrupt. (*Webber* v. *Clark*, 136 Ill. 256, and authorities there cited.) The assignee was a mere trustee, and unless he assumed a hostile attitude towards his *cestuis que trust*, his naked legal title never was or became adverse to the interests of the beneficiaries in the trust. If, on the other hand, at any time while the title was in him, he shook off the trust and claimed an interest adverse to the interest of the beneficiaries, then the two years' limitation began to run against the right under which appellant claims, and it continued to run after the title passed to Grant by the assignee's deed and until it became a complete bar. *Greene* v. *Taylor*, 132 U. S. 415; *Gifford* v. *Helms*, 98 id. 248; *International Bank* v. *Jenkins*, 104 Ill. 143.

The contention of appellees is, that when, in 1875, Hancock, the assignee, filed his petition for the sale of the three hundred and ten acres of land, he thereupon assumed an absolute adverse attitude with respect to the premises here in question, and the title then being in him, as assignee, the limitation statute commenced to run, and continued to run when he conveyed the same title to Grant. There would be much force in this contention if the proceeding in the bankrupt court, and the subse-

quent sale and conveyance by the assignee, had been for the purpose of realizing on an asset of the estate. It would have been a disclaimer of the trust. But these averments are made upon the face of the bill and are admitted by the demurrer: "And the said Hancock, in applying to the court in bankruptcy for leave to make the sale, stated that neither the schedule of the said Beecher nor the schedule of the said Chatfield and Beecher made any mention whatever of any interest in the aforesaid premises, but the said Hancock, in his petition in connection with said application, further stated that he was informed and believed that the said deed was a cloud upon the title of a large number of individual owners of different portions of the three hundred and ten acres aforesaid, and that said owners were farmers in possession of portions of the premises, and had applied to said Hancock to advertise and sell the interest of said Beecher in said premises, and offered to pay therefor such a sum as would pay for all the expenses attending the sale." The bill further shows that the tract of three hundred and ten acres was sold by the assignee to Grant for $160, —about fifty cents an acre,—and that the deed made by the assignee only purported to convey the right, title and interest of Beecher and all right of the assignee, but "subject to all unpaid taxes and to all liens and encumbrances, and also subject to all the terms and conditions of said sale."

The assignee solemnly came into court, and in a formal petition addressed to the court stated that he was informed and believed that the very deed upon which his whole title and interest depended was a cloud upon the title of the individual owners of different portions of the three hundred and ten acre tract. That fact alone affirmatively and sufficiently shows, not only that he did not himself claim to be the owner, but that he fully recognized and admitted the titles of the individual owners of the different portions of the tract, and when he asked,

at the instance and upon the application of all or some of the owners, that his title and interest, and that of his assignor in bankruptcy, should be sold to the owners, or their representative, for "such a sum as should pay for all the expenses attending the sale,"—and this upon the ground that the deed upon which his title depended was a cloud upon the title of the real owners,—it is perfectly manifest that he had no intention whatever of claiming adversely to the real owners of the different and respective portions of the tract. It is evident that the sole interest and object that the assignee had in view in procuring the order of the court and in making the sale, that was intended for the benefit of either himself, as assignee, or the estate of the bankrupt, was, that the sale should be made for a sufficient sum to pay off all the costs and expenses of the sale. This object he accomplished by selling the tract of three hundred and ten acres, *in solido*, to Grant, when twenty acres of that land was considered ample security for a loan of $3000.

The title and interest that were vested in the assignee were sold and conveyed "subject to all liens and encumbrances." There was no interest in him other than the legal title, and there was no encumbrance upon the legal title that had passed from Beecher to his assignee, other than the encumbrance of the trust for the benefit of the beneficial owners. The title was subject to that trust, and the trust was an encumbrance upon the title, and the assignee was bound to take notice of that encumbrance, and Grant had actual notice of it.

When the assignee in bankruptcy conveyed to Grant, the two years limitation statute had not commenced to run against the equitable title and interest of Sayles and Walker and those claiming under them, and by that conveyance the title and the property or right of property were removed beyond the possibility of being affected by the provisions of that statute. After the delivery of the deed to Grant there was no property or

right of property in the assignee to which any interest claimed by any other person could be or could become adverse. The interest must necessarily become adverse in the assignee, for by the very terms of the statute the cause of action must accrue "for or against the assignee," and to hold otherwise, and that the statute could begin its course after the title and interest had passed out of the assignee, would be to give the statute a scope beyond the purview of the power delegated to the Federal Congress to establish uniform laws on the subject of bankruptcies throughout the United States.

In *Roby* v. *Colehour*, 146 U. S. 153, Roby, while holding the title to certain property in which the Colehours were interested, went into bankruptcy, and afterward purchased the property at a sale by his assignee. Some years later the Colehours brought suit against Roby to enforce the recognition of their interests in the property and obtained a decree, which was affirmed by this court, and from here taken to the Supreme Court of the United States. That court says: "If, at the time of filing his petition in bankruptcy, he was bound by his relation to the Colehours, although holding the legal title, to account to them for their portion of the land, as defined in a previous declaration of trust to which he was a party or to which he assented or by which he was bound, he was not discharged from that application by merely purchasing the lands from his assignee in bankruptcy. * * * The conveyance to his assignee passed to the latter only such interest as he in fact had, and when he bought from the assignee he purchased only such as he could have conveyed originally to his assignee." We fail to see what better position these defendants, who purchased with notice of the trust relation, could occupy than the trustee himself.

A point is made, that under the assignment in bankruptcy of Sayles, his assignee, Jenkins, took the equity of redemption, an estate, and that he took such estate, not

in his individual capacity, but in his capacity as assignee, —an officer of the court in bankruptcy; that the deed made by him to Henry H. Brown, appellant's grantor, without any order of court, could pass nothing more than the naked legal title, if that, to the equity of redemption, and that therefore appellant is not the real owner of said equity of redemption, but that it is still in the assignee or has reverted to the bankrupt. The conclusion reached is incorrect, and this, even if for no other reason, owing to the incorrectness of the premises assumed. The allegations of the bill are: "That afterwards, to-wit, on the 25th day of October, A. D. 1880, the said Robert E. Jenkins, as assignee in bankruptcy of said John E. Sayles, did, by deed, in due form of law, then executed by the said Robert E. Jenkins, as such assignee, convey the said land, for a valuable consideration, to Henry H. Brown." Since said deed was executed by Jenkins "as assignee in bankruptcy" and "in due form of law," it follows that it was executed in his official capacity, and in conformity with all the prerequisites necessary to pass to the grantee all the title and interest of the assignee.

It is contended by appellees that the claim of appellant to relief, if it is based on the deeds conveying Sayles' equity of redemption, is barred by the two years limitation statute that we have already considered in another connection. We think this contention well grounded. The assignment in bankruptcy to Jenkins was made on June 20, 1879, and before that date the Beecher-Hancock title and interest, under which appellees hold, had, in the hands of Grant, (he having disclaimed the trust assumed by Beecher for the benefit of Sayles and Walker,) become adverse to the Sayles equity of redemption. So the statute began to run in favor of the Grant title, as against said equity of redemption in the hands of Jenkins, as assignee, on said June 20, 1879, and when, on October 25, 1880, Jenkins deeded to Brown, it still continued to run, and in June, 1881, it tolled the right to main-

tain a suit based on the interest that had been vested in the assignee, Jenkins, as against the Grant title and interest.

A further contention is made by appellees which we think is well grounded. It is, that appellant, in her attitude of beneficiary under the trust 'deed that was made by Sayles on his equitable title and interest, to Chambers, in order to secure the $3000 that she loaned to Sayles, is not entitled to a conveyance to herself of the title that was placed in Beecher in trust for Sayles and Walker, and that such relief could be asked only by the absolute owner of the Sayles-Walker title. If appellant, instead of taking a conveyance of the equity of redemption from Brown, had foreclosed the trust deed or mortgage by virtue of her equity as holder of the note secured thereby, and, by means of the deed executed in consummation of such foreclosure, had become the owner of the entire equitable title and interest, we think it plain that under the other circumstances disclosed by the bill of complaint she would have been entitled to a conveyance of the Grant-Klehm-Harms title and interest. But she did not do this, and the complications attending the enforcement of her equities are largely owing to her failure so to do.

But appellees, in claiming that appellant stands before the court in two attitudes, and that as holder of Sayles' equity of redemption she is barred by the statute, and as beneficiary in the trust deed is not entitled to the relief sought, because of her failure to obtain title by foreclosure, sale and deed, do not exhaust the whole measure of the rights and equities that are vested in appellant. As shown by her bill, she stands in three attitudes, instead of two, only. Sayles, through the deed from Walker, became the owner of the entire equitable estate, and by the trust deed to Chambers he conveyed to him the legal title to the equitable estate and interest in the twenty acres of land in controversy. Chambers

held this title to the equitable estate as trustee, for the purposes of the trust created by the trust deed. Appellant, being already possessed of the equity that accrued to her by virtue of her being the holder of the note secured by the trust deed, afterwards became the owner of the equity of redemption of Sayles, the grantor in the trust deed, and this latter result was accomplished by means of the Sayles bankruptcy proceedings and the deeds executed by Jenkins, as assignee, and by Brown.

A conveyance of the trust property by the grantor in a deed of trust to the party whose debt is secured by the same, passes the equity of redemption but not the legal title, and the latter still remains in the trustee, and the grantee, in such case, has the right to require a conveyance of the legal title from the trustee. (*Meacham* v. *Steele*, 93 Ill. 135.) And where the legal title is vested in the trustee, it requires a re-conveyance to place the legal title back in the grantor, his heirs or assigns. (*Vallette* v. *Bennett*, 69 Ill. 632; *Kirkland* v. *Cox*, 94 id. 400.) Here, appellant, being the owner of both her original equity and of the equity of redemption, became and was entitled to a conveyance of the legal title by Chambers, the trustee, and she therefore made said Chambers a party defendant to this bill, and asked that he be required to convey to her the title and interest which he has under said trust deed, it being the legal title to the equitable estate. Appellant is now in court asking a conveyance from Chambers, her trustee, and in a court of equity that which ought to be done is considered as done. (*Rankin* v. *Rankin*, 36 Ill. 293; *Lombard* v. *Chicago Sinai Congregation*, 64 id. 477.) Appellant, then, must be considered, in this litigation, as the owner and holder of, and as vested with, the legal title to the equitable or beneficial estate in the twenty acres of land in controversy. When appellant purchased the equity of redemption, that equity, and her prior equity as owner and holder of the note secured by the trust deed, did not merge,

because it would not be for her interest that such merger should take place. *Campbell* v. *Carter*, 14 Ill. 286; *Edgerton* v. *Young*, 43 id. 464; *Richardson* v. *Hockenhull*, 85 id. 124; *Meacham* v. *Steele*, 93 id. 135; *Lowman* v. *Lowman*, 118 id. 582; *Watson* v. *Gardner*, 119 id. 312. And see, also, *Burton* v. *Perry*, 146 Ill. 71, where the question at issue between Mitchell and the Louisville Banking Company was analogous to the question now under consideration.

There can be no claim that the bar of the two years limitation law found in the Federal statute has any application whatever to the legal title to the equitable estate, because that title passed out of Sayles more than three years before he was adjudged a bankrupt, and never was property or a right of property transferable to or vested in Jenkins, his assignee. And for like reason the original equity with which appellant was invested by the trust deed never came within the domain of that statute. And when, afterwards, appellant became vested with all three interests in the equitable estate, the merger that took place was not a merger of the legal title and of the equity as holder of the note in the equity of redemption, but the equity of redemption and the equity as holder of the note secured by the trust deed became merged in the legal title, and this because the legal title is the greater of the three. *Talcott* v. *Draper*, 61 Ill. 56; *Dexter* v. *Harris*, 2 Mason, 531; *Cohn* v. *Hoffman*, 45 Ark. 376; Jones on Mortgages, sec. 873.

The title to the equitable estate and beneficial interest is vested in appellant, and the equity of redemption and all other equities have fallen into that title and been merged in it. Identically the same thing has been accomplished that would have resulted from foreclosure, sale to appellant by the master, and execution and delivery of deed to her upon expiration of the time allowed by statute for redemption, and neither the appellees, nor any one or more of them, have any such interest as would give the right to redeem. The title of appellant, as we have

already seen, is not barred or affected by the limitation statute.    She is now, so far as this twenty acres of land is concerned, the absolute owner of the entire interest in the equitable and beneficial title, interest and estate that was in its inception vested in Sayles and Walker, and she is entitled to a conveyance of the Grant-Klehm-Harms title, provided the material facts alleged in her bill of complaint are proved and no valid defense is established.

The decree of the Superior Court is reversed and the cause is remanded, with directions to overrule the demurrer to the bill, and to allow the bill to be amended, if the complainant therein shall so desire, and to give the defendants leave to answer, if they shall be so advised by counsel.               *Reversed and remanded.*