## Bromley Carpet Co. v. W. D. Field et al.
## Bromley Carpet Co. v. Geo. C. Prussing et al.

1. PRACTICE—*Dismissing Fraudulent Suits.*—While a collusive or fraudulent suit is still pending, the court will, at the suggestion of either party to the record, or a person in interest, or who may be prejudiced by the judgment, or even at the instance of a stranger who appears as *amicus curiæ*, or upon its own motion, dismiss such suit out of court.

2. PLEADING—*Party Must State Facts Positively.*—Where facts are within the knowledge of a party, he must state them positively in his pleadings.

3. SAME—*Positive Statement of Facts with Additional Words "As Your Oratrix is Informed and Believes."*—Where allegations are made in the form of a direct and positive statement of facts, with the additional words " as your oratrix is informed and believes," it would seem that there is more than a simple averment of the complainant's confidence in the truth of the representations, and they may be regarded as averments of the facts, together with a statement of the source from which knowledge of those facts was derived.

4. PARTIES—*When One Becomes a Quasi Party.*—Where one shows an interest and asks to be heard, by the filing of his petition he becomes a *quasi* party.

Creditor's Bill.—Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in this court at the October term, 1899. Reversed and remanded with directions. Opinion filed March 26, 1900.

**Statement by the Court.**—May 1, 1897, George C. Prussing, a judgment creditor of William J. and James E. Moore, under two separate judgments on which executions had been issued respectively and returned unsatisfied, filed a creditor's bill against William J. Moore, the E. A. Moore Furniture Co., a corporation, and others, in which it was alleged, among other things, that the Moores had organized said furniture company and placed their property under the ostensible control and management of the corporation, for the purpose of fraudulently placing it beyond the reach of their creditors, and that the Moores conducted the business of said corporation under the corporate name as a sham and pretense to cover up and conceal the ownership

by said Moores of all the property ostensibly under the control of the corporation, and that they received and appropriated all the profits of such business and money collected in the prosecution of the same, setting forth the details of their action in that regard, and by the bill sought the appointment of a receiver of the property of the furniture company and the application of such property to the payment of his judgments.

August 16, 1897, one Galpin was appointed receiver of the property of William J. Moore, of the estate of James E. Moore, who had died after the rendition of the judgments, and also of the property and assets of the furniture company, and the receiver was directed to carry on the business of the furniture company in the ordinary course.

By amendment to the bill it was alleged that William J. Moore had assigned to one Wilson D. Field a large amount of promissory notes and chattel mortgages, but that such assignment was fraudulent and for the purpose of cheating and defrauding Moore's creditors, and prayed for a discovery of all such property so assigned by Moore to Field.

By stipulation thereafter made, Field having in the meantime admitted by his answer that Moore had delivered to him certain chattel mortgages and notes secured thereby as security for two loans by Field to Moore aggregating $4,200, the said mortgages and notes were delivered to the receiver subject to the claim of said Field, it being further stipulated that the issues between the complainant and Field as to the good faith of said transfer should be referred to a master to take evidence and report his conclusions thereon, and if said issues should be decided in favor of Field, the amount due to him should be paid by the receiver out of the moneys collected on said notes and mortgages, less expenses of collection, and that either party might appeal from any final order upon said issues.

It also appears that upon an amended petition of Alice M. Moore, filed March 3, 1899, a master's report was filed, finding that she had become the surety of the furniture company upon an appeal bond to the Supreme Court of

Illinois, in an appeal taken by the company from a judgment recovered against it, which judgment was affirmed by said Supreme Court, and she was compelled to and did pay the same, amounting to the sum of $1,913.11, for which amount she was entitled to a lien upon certain chattel mortgages assigned and delivered to her by the furniture company, and which she had subsequently turned over to the receiver, subject to her lien. On March 25, 1899, the court ordered the receiver to pay to Alice M. Moore the sum of $1,826, which was found to be the amount collected by the receiver at that time out of the notes and chattel mortgages so turned over to him by said Alice M. Moore.

April 10, 1899, the master, after having taken evidence upon the issues between the complainant and said Field as to the latter's claims on the notes and chattel mortgages assigned to him, reported that Field was entitled to be paid out of the moneys collected by the receiver upon the notes and chattel mortgages turned over to the latter by Field, the sum of $4,290.38.

April 15, 1899, the Bromley Carpet Company obtained leave to file its intervening petition in the cause, and an order that the receiver, Field, Prussing, and all the defendants answer the petition in ten days.

Thereafter, on April 17, 1899, the Bromley Carpet Company filed its said petition, which, among other things, alleges that on April 14, 1899, it filed a bill in the Circuit Court of Cook County against the said furniture company and others, seeking a dissolution of the company and a distribution of its property among its creditors; that said Galpin was appointed receiver under said bill, and a copy thereof was attached to the petition and made a part of the same. And as to the claim of Alice M. Moore, (hereinabove referred to), the petition charges that "petitioner is informed and believes and so states the fact to be" (in substance), that she had no lien whatever upon the notes and mortgages delivered to her; that complainant and his solicitor claimed that the transfer to her was fraudulent and void, and they so continued to represent to the court and the creditors of

the furniture company until about March 1, 1899, and that they made the same claim and representation as to the said assignment and transfer of the notes and mortgages to said Field, and that about said last mentioned date petitioner "states upon information and belief and charges the fact to be" that complainant, through his solicitor, perfected a compromise with said William J. Moore, Field, the furniture company and Alice M. Moore, the exact terms of which were unknown to the petitioner, but by which it was agreed that the claim of Alice M. Moore should be allowed in this cause, though she was to be paid no money, but the same should be paid to complainant as a consideration for the said compromise; that the claim of said Field should be allowed by the court, but he was to receive no money, and the money should be paid to complainant; that the said claims of Moore and Field were to be litigated without the knowledge of the creditors of the furniture company; that Prussing's attorney should appear for him and the receiver, and make a pretended opposition to the allowance of the Field claim; that pursuant to the agreement, about $1,800 was paid by the receiver on the Moore claim, pursuant to the decree of the court, which was also entered pursuant to said collusive agreement, the check of the receiver therefor being drawn to the order of Eugene Prussing for the benefit of complainant; that also pursuant to the same arrangement, no evidence was offered in opposition to the claim before the master, but for the purpose of deceiving the creditors of the furniture company and of making a pretense of resisting the claim of Field. Prussing's attorney filed exceptions to the master's report and argued the same before the court; that a few days after the argument before the court, of said exceptions, one of the solicitors of petitioner (naming him) learned of said agreement of compromise; that theretofore petitioner had believed that the receiver had been protecting the interests of the creditors of the furniture company and had been making a proper and *bona fide* defense to said claims of Alice M. Moore and Field.

The petition also further alleges and sets forth a state of facts, giving the name of a witness by whom they could be established, and which, had they been proven before the master and the court, would, in all probability, have resulted in the disallowance of the claim of said Field by the master; and also alleges that the same came to the knowledge of petitioner just before the filing of its petition.

The petition prays that the court decree that the complainant pay to the receiver the moneys so received by him upon the claim of Alice M. Moore; that the claims of said Moore and Field be decreed to be fraudulent and void, and that said claims be referred to a master, with leave to petitioner to introduce evidence to sustain the allegations of the petition, and that on final decree that the court grant such relief as shall seem meet. The petition is verified by the oath of David K. Tone, who states that he is the agent of petitioner and that the matters and things stated in the petition and the copy of the bill attached thereto are true, except as to those matters and things therein stated to be upon information and belief, and as to those matters and things so stated to be upon information and belief, he believes the same to be true.

The copy of bill attached to the petition is filed on behalf of the Bromley Carpet Company and all creditors and stockholders of the furniture company who may become parties complainant to the suit, file their claims and share the expenses thereof; sets up the incorporation of the furniture company, the appointment of the receiver in this case and his proceedings under such appointment; recovery of judgment against the furniture company, in favor of the carpet company, on October 8, 1897; execution issued thereon and return *nulla bona;* charges that the judgment is still in full force and unsatisfied, and that if there was fraud in the management or organization of the furniture company or of its business for the benefit of the Moores, the fact was unknown to the complainant at the time the indebtedness to the complainant was contracted by the furniture company; alleges the possession by Field of the said notes and

mortgages hereinabove mentioned, that the claim of Field was wholly false and unfounded, and that said notes and mortgages were delivered to him with intent to defraud the creditors of the furniture company, and that Field was insolvent. The bill prays that the corporation be dissolved, a receiver appointed, and its assets distributed among its creditors and that the claim of Field be declared fraudulent and set aside.

The complainant and the receiver demurred generally and specifically to the intervening petition, and for special cause of demurrer set up that the petitioner did not show by its petition that it had any interest whatever in the subject-matter of the issues in the cause, nor in the assets in the hands of the receiver. The demurrer was sustained and the petition dismissed for want of equity, and on the same day the court overruled exceptions to the master's report as to the claim of Field and allowed his claim, except as to the item of interest, directed its payment by the receiver, and also the payment of $100 to the master for his fees. The Bromley Carpet Company prayed for and was allowed an appeal from this order, which is the matter for consideration in the first of the causes above entitled.

Thereafter, on May 19, 1899, the court entered a decree finding the amount due to complainant on his said judgments, among other things, and directing that all the assets of the furniture company in the hands of the receiver be subjected to the payment of said judgments, except such parts thereof as were ordered to be used for the payment of the liens in favor of said Alice M. Moore and Field, and as may be necessary to pay expenses, and further directed that the receiver be allowed $1,000 as compensation for his services as receiver, and that he be authorized to pay to his solicitor $600 for his services. From this latter decree the Bromley Carpet Company prayed for and was allowed an appeal, and this is the matter to be considered in the second of the above entitled causes.

IVES & TONE and HOYNE, O'CONNOR & HOYNE, attorneys for appellant.

SIGMUND ZEISLER, attorney for appellees George C. Prussing et al.

JUDD & HAWLEY, attorneys for appellees W. D. Field et al.

MR. JUSTICE WINDES, after making the above statement delivered the opinion of the court.

The two appeals will be considered together. No claim is made that the appeals do not bring up for consideration the action of the court in sustaining the demurrer to appellant's petition.

Several matters relating to the sufficiency of the evidence to support the decrees in favor of Field, the receiver and his solicitor, and of procedure by the court, and as to priority between the petitioner and the complainant in the original bill, but it is unnecessary to consider these matters in view of our conclusion reached upon the first point made by appellant in each of the appeals, viz., that there was collusion between the parties to the litigation and their solicitors.

In re Burdick, 162 Ill. 48, 52, the court say:

"It is settled law that while a collusive or fraudulent suit is still pending the court will, at the suggestion of either a party to the record, or a person in interest, or who may be prejudiced by the judgment, or even at the instance of a stranger who appears as *amicus curiæ*, or upon its own motion, dismiss such suit out of court."   (Citing cases.)

In McAdam v. The People, 179 Ill. 316, the Supreme Court re-affirm the doctrine of the Burdick case, *supra*, and say:

"Where there is no real controversy there is nothing to decide.   Besides, the court receives no assistance, but is misled by the researches and labor of counsel in such cases."

To a like effect in principle is the case of People v. Gen. Elec. Ry. Co., 172 Ill. 129–146.

In the light of these decisions it only remains to be considered whether there was a sufficient showing made to the

court of collusion. If there was a collusive agreement between the parties litigant which resulted in the allowance of the claims of Alice M. Moore and Field and the payment of the money which the receiver was directed to pay to them respectively, to the complainant Prussing, then there was a fraud perpetrated upon the creditors of the furniture company and upon the court, and it was error for the court to proceed with their adjudication without giving the appellant an opportunity to present any legitimate defense to such claims.

The appellant, after the hearing of the claim of Alice M. Moore and its allowance and payment in part by the receiver, and after the hearing of the Field claim before the master and the consideration of exceptions to his report by the court, was allowed to file its intervening petition, which shows that appellant is a judgment creditor of the furniture company, that an execution issued upon its judgment had been returned *nulla bona*, and it had filed a creditor's bill in the Circuit Court on said judgment, in which it was alleged, among other things, that the assignments of the notes and chattel morgages to Field were fraudulent and void, and that said notes and mortgages constituted assets of the furniture company, which were therefore subject to the payment of the claim of appellant, and that appellant had no knowledge, at the time the indebtedness on which its judgment was rendered, was incurred, that there was any fraud in the organization of the furniture company or in the conduct of its business, as set forth in the complainant's bill. These allegations furnished a basis for a question as to whether appellant should be preferred in the payment of its claim out of the assets of the furniture company over complainant Prussing, the basis of whose claim was judgments against the Moores, individually, he alleging that the business and property of the furniture company were really the business and property of the Moores individually. This question became immaterial when appellant's petition was dismissed out of court.

In addition to the above matters appellant's petition

alleges the fact to be, though upon information and belief, that the claim of Alice M. Moore of a transfer to her of the notes and mortgages delivered to her, was fraudulent and void, and that she had no lien whatever on such notes and mortgages, and also it further alleges the fact to be, though upon information and belief, that the transfer of the notes and mortgages to Field was fraudulent and void, and without any consideration, and for the purpose of defrauding the creditors of the furniture company, and further charges the fact to be, though upon information and belief, that the complainant, through his solicitor, perfected a compromise with said William J. Moore, Field, the furniture company and Alice M. Moore, by the terms of which it was agreed that both said claims should be allowed by the court, but that no money should be paid on either of them; that the money ordered to be paid on them should be paid to the complainant, and that the receiver actually paid to Eugene Prussing, for the benefit of complainant, about $1,800, which was ordered to be paid upon the claim of Alice M. Moore, and that it was further agreed that complainant's attorney should, for him and the receiver, make a pretended opposition to the allowance of the Field claim, and that pursuant to the same agreement no evidence was offered in opposition to the Field claim, and that what defense was made to the Field claim was for the purpose of deceiving the creditors of the furniture company by making a pretended resistance to the allowance of such claim.

The petition also alleges a state of facts which, if proven, (and the name of the witness by whom it is claimed they could be proven is given and the matters to which he would testify are set out in detail,) would, in all probability, have resulted in the disallowance of the Field claim.

The demurrer of the receiver and of the complainant to this petition admits, for the purposes of its consideration by the court, all the matters of fact therein properly alleged. In view of the demurrer, the fact that the allegations as to the collusive agreement between the parties litigant and their solicitors are upon information and belief, is not sufficient to justify the court in sustaining the demurrer.

In Campbell v. P. & D. R. R. Co., 71 Ill. 611, a tempo-
rary injunction, upon a bill, the allegations of which were
similar to the allegations in this petition, was, upon demurrer
to the bill, dissolved, the demurrer being sustained and the
bill dismissed.   The court say:

"It is a general rule that, where facts are within the
knowledge of a party, he must state them positively in his
pleadings.   Story, in his work on Equity Pleadings, Sec-
tion 255, says the claims of a defendant may be stated in
general terms, 'and if matter essential to the determination
of the claims of the plaintiff is charged to rest in the knowl-
edge of the defendant, or must, of necessity, be within the
knowledge of the defendant, and is consequently a part of
the discovery sought by the bill, a precise allegation thereof
is not required.'   Had this allegation related to a fact in
the knowledge of complainants, it is clear that it would
have been insufficient; but where the fact lies alone in the
knowledge of the defendant, and discovery is sought, we
are not prepared to hold that it may not be stated that the
plaintiff is informed and believes the fact to be true, fol-
lowed by a statement that he therefore charges the fact to
be true."

In the case of Coryell v. Klehm, 157 Ill. 462–76, where a
demurrer to the bill had been sustained by the chancellor,
the court, after referring to the Campbell case, *supra*, say:

"Where the allegations are made in the form of direct
and positive statements of facts, with the additional words,
'as your oratrix is informed and believes,' it would seem
that there is more than a simple averment of the complain-
ant's confidence in the truth of the representations, and
they may be regarded as averments of the facts, together
with a statement of the source from which knowledge of
those facts was derived."

If there was a collusive agreement, as charged, it was
within the knowledge of the parties to such agreement,
and we are of opinion that the chancellor should have
required answers to the petition, and investigated as to
whether in fact there was a collusive agreement which
resulted in the allowance of the Moore and Field claims,
and in the payment of part of the Moore claim to complain-
ant, and that it was error for the court to proceed further

in the cause until it had ascertained, upon a full hearing, whether or not such collusive agreement existed, and if it did exist, and complainant had received $1,800, or any amount of the Moore claim, then it was the duty of the court to order such amount refunded to the receiver and require a rehearing as to both claims.

It is claimed that the transcript of the record in both the appeals is insufficient, but we regard it as entirely sufficient for a disposition of the matter of the alleged collusion, whatever may be said as to its sufficiency upon the other points raised and argued, which we have thought it unnecessary to consider.

The claim of appellees that the petition is insufficient in that it came too late, and that it does not show an exercise of ordinary diligence on the part of petitioner as to the discovery of the new evidence, is not tenable. We think the allegations of the petition are sufficient, but if it could be said they were insufficient in these respects, still the court should have investigated the charge of collusion without determining, in the first instance, whether or not it would grant a rehearing of the claims. If there was collusion, then there was no proper adjudication of the claims.

The contention of the appellee Prussing, that appellant did not become a party to the proceeding, and that he was therefore not entitled to be heard, is not well taken. It showed an interest and asked to be heard, and by the filing of its petition it became a *quasi* party. Williams v. Morgan, 111 U. S. 684–93–98, and cases cited; South Park Commissioners v. Phillips, 27 Ill. App. 380; Marsh v. Green, 79 Ill. 385; Reid v. Sheffy, 75 Ill. App. 136; Louisville Trust Co. v. R. R. Co., 19 Sup. Ct. Repr. 827.

In the Marsh case, *supra*, the court seems to have contemplated that the intervenor should become a party, but in the cases in this court the practice is recognized without question, and in the Williams case, *supra*, it is held that by intervening, the intervenors become *quasi* parties and were entitled to appeal.

The claim of appellee Prussing, that the consequence of

the court's arriving at a conclusion that there was collusion would be a dismissal of the proceeding, is, in our opinion, not tenable. It is true that in most cases such is the result, when it is shown that there was collusion, but it does not necessarily follow. In the Louisville Trust Co. case, *supra*, where a collusive agreement was charged by way of petition, the decree of the court was reversed and the cause remanded, with instructions to the trial court to set aside the confirmation of a sale made pursuant to the decree, and to inquire as to the truth of the charge of collusion.

In the first of the above entitled causes the order allowing the Field claim and the master's fee is reversed, and the order sustaining the demurrer to appellant's petition is also reversed, and the cause remanded, and the Superior Court is directed to overrule the demurrer to appellant's petition and to inquire as to the truth of the charges of collusion set forth in said petition, and to take such other and further proceedings in said case as shall be in conformity to law.

In the second of the above entitled causes, the decree of May 19, 1899, is reversed, and the order of the court sustaining the demurrer to appellant's petition is also reversed and the cause remanded, and the Superior Court is directed to take such further proceedings as are above directed in the first of said appeals. Reversed and remanded with directions.