Carl F. Mohr et al., Appellees, v. Gustav A. Smith et al., on appeal of The Maytag Company, Appellant.

### Gen. No. 18,917.

1. CHANCERY—*jurisdiction.* A court of equity will exercise jurisdiction where an accounting is sought of funds alleged to have been wrongfully collected in violation of a position of trust and confidence, which funds in fact have come into the hands of others without consideration and with knowledge of the facts, and where it seems that fraud is present, that relief at law would be impossible for several of the complainants, that multiplicity of suits would be avoided and that a discovery should be granted.

2. INJUNCTION—*verification.* A verification of a bill for injunction which recited that the matters and things contained therein "are true in substance and fact as therein alleged," *held* sufficiently positive to warrant the granting of the injunction.

3. INJUNCTION—*discretion of chancellor as to bond.* An interlocutory injunction order is not erroneous because it does not require all of complainants to sign the bond instead of one or more, since the discretion of the chancellor will be interfered with only when it appears to have been improperly exercised.

4. INJUNCTION—*sufficiency of bond.* Where complainants are granted an interlocutory injunction, if the bond signed by one of the

complainants is sufficient as to surety and amount, it would not seem that further signatures are necessary.

5. INJUNCTION—*when objection to bond as to form*. An objection that the bond of complainants in whose favor an interlocutory injunction was granted was signed by only one of the complainants goes to the form thereof and may be remedied upon application to the chancellor if necessary.

6. INJUNCTION—*bill*. Bill *held* sufficiently specific as to notes, the collection of which it seeks to enjoin.

Appeal from the Superior Court of Cook county; the HON. CLARENCE N. GOODWIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1912. Affirmed. Opinion filed December 19, 1912.

Statement by the Court.    This is an appeal by the Maytag Company from an interlocutory order of injunction restraining the defendants from transferring, disposing of or instituting a suit or suits upon certain notes and other choses in action signed by some of the complainants.    The controversy grows out of the alleged wrongful doings of Gustav A. Smith, one of the defendants.

The bill alleges that Smith and one of the complainants, Carl F. Mohr, who were promoting the organization of a certain corporation known as the Mausoleum Securities Company for the purpose of erecting and dealing in mausoleums, organized a syndicate consisting of themselves and the other complainants for said purpose; that Smith and Mohr subsequently were paid a certain amount of the capital stock of said company for their services as promoters and also for procuring and transferring to the company certain territorial rights of using a certain patent for the erection of mausoleums; that the patent was owned and controlled by a concern known as the International Mausoleum Company, of which Smith and the defendant Fred Maytag were officers and principal stockholders; that said Mausoleum Securities Company was organized primarily for the purpose of so procuring and

working said territorial rights; that said Smith, during the promotion and before the final organization of the Securities Company, represented to the complainants that one W. I. Hood was the owner of 5,606 shares of the capital stock of the International Company, and falsely, wilfully and knowingly represented to the complainants that if the stockholders of the Securities Company would procure the ownership of said stock of the International Company owned by Hood, the same, together with what stock Smith himself held therein, would give them the practical control of the International Company to the great advantage of the Securities Company; that the complainants, relying upon and in pursuance of the representations of Smith and upon the latter's further representation that he himself could deal more advantageously with Hood with regard thereto, empowered and directed Smith to negotiate with the said Hood for its purchase, and in pursuance thereto Smith, after negotiating with said Hood, reported back that the stock could be bought for the sum of $200,000—$50,000 in cash and the balance of $150,000 in notes—and that the same were the best terms obtainable from Hood; that the complainants, relying on said representations of Smith decided to purchase the Hood stock on these terms and agreed with each other and with Smith that the same should be purchased for the joint use of the complainants and Smith in the name of Herman H. Mohr, Carl F. Mohr and Henry D. Mohr; that thereafter $10,000 was paid to Hood as earnest money and subsequently the balance of $40,000 in cash was paid and notes in the aggregate sum of $150,000 were executed by the three trustees and delivered to Hood in payment of the balance of the purchase money; that the defendant Smith and the other complainants entered into an agreement indemnifying the three trustees for signing said notes for their use, whereby they became bound in all respects as if they themselves had subscribed said notes as comakers; that thereupon the

said stock was transferred by said Hood to the complainants Charles M. Herrig, Herman H. Mohr and Carl F. Mohr, as trustees, who held the same for the common and joint use of all the complainants and the defendant Smith.

The bill further alleges that the complainants, during all of said negotiations, placed full and explicit reliance and confidence in the integrity, honesty and good judgment of said Smith, and believed that he would at all times hold sacred the fiduciary and confidential relation existing between them, and would not violate the same; that Smith led the complainants to believe, and they did at all times implicitly believe, that Smith in negotiating with said Hood for the purchase of said stock was dealing and acting fairly and impartially for the common benefit of all of them, and would not derive any secret profit or commission to himself or any advantage whatsoever over the complainants, and that they placed full reliance and belief in all the doings and representations of said Smith in the premises; that Smith, notwithstanding he knew the complainants were so relying thereon and placing their full and implicit confidence and reliance in his honesty, integrity and good judgment in the premises aforesaid, nevertheless, in violation of his representations and his relations of trust and confidence, fraudulently, surreptitiously, secretly and unlawfully, and without the knowledge of the complainants, entered into a prearrangement with the said Hood whereby Smith was to receive, and subsequently, in pursuance thereof, did receive, from Hood divers sums of money, credits, choses in action and other valuables, aggregating the sum of not less than $50,000 as secret commission for negotiating and consummating the sale of said stock of the International Company owned by Hood; that Hood, pursuant thereto, immediately paid said sums and also transferred and delivered to Smith certain of the said promissory notes executed by the three complainants acting as trustees which had been

received by Hood for the sale of his stocks, and that Smith received the same secretly, unlawfully and in violation of the trust and confidence reposed in him by the complainants, contrary to equity and good conscience, to his own use without accounting for the same to the complainants.

The bill further alleges that Smith thereupon delivered the whole or part of the notes so received by him from Hood to the defendant Maytag who was president of and principal stockholder in the International Company; that Smith and Maytag then and for a number of years prior thereto, were closely and intimately associated with each other in business and social affairs, occupying the same offices in the First National Bank Building, in Chicago, Ill., and living together and occupying the same rooms in the greater part of the year at the Grand Pacific Hotel at Chicago, and were frequently associated with each other in business transactions, and that they had complete control of the International Company by reason of their ownership of most of its capital stock and their positions as its officers, and at all times acted in harmony in manipulating its affairs. Upon these premises the bill bases the charge that Maytag, at the time he received the notes from Smith, well and fully knew all the facts surrounding the transaction in which the notes were executed and delivered to Hood and by Hood in turn delivered to Smith and that Smith had received the same by way of secret profit or commission in violation of the trust and confidence reposed in him by the complainants, and that the defendant Maytag, at the time he received the same, well and fully knew that in equity and good conscience they ought not to be paid by the complainants for the reasons aforesaid, and that the notes were either transferred and delivered to Maytag without any good or valuable consideration but purely for the purpose of placing the same ostensibly in the hands of an innocent holder, or else that Maytag was secretly inter-

ested with Smith.  The bill further alleges that Maytag and Smith connived and conspired together and acted in unison in voting their stock in the International Company so as to deprive the complainants and the Securities Company of any beneficial voice in the affairs of the International Company, all contrary to the prior representations of Smith.

The bill further alleges that Maytag immediately transferred the notes received by him to the appellant, the Maytag Company, a corporation, which it is alleged is substantially a "one man corporation," and that Maytag was the owner or in control of all its capital stock and the president thereof, and that by reason thereof the said Maytag Company was in law and in equity and good conscience charged with notice of all the facts, circumstances and details aforesaid.  It also alleges on information and belief that the transfer of said notes by Maytag to the Maytag Company was without valuable or good consideration.  It is further alleged that certain of said notes were paid to the Maytag Company and that when it received payment thereof it full and well knew that in law and equity and good conscience it should not receive payment thereof for the reasons aforesaid; that the remainder of the notes received by it were subsequently renewed and renewal notes executed by the complainants, Herman H. Mohr, Carl F. Mohr, Henry D. Mohr and Adolph L. Herrig, and by the defendant Smith, and payable to the order of the Maytag Company, and that there are three of said notes in the principal sums of $5,000, $5,000 and $663 now held by the Maytag Company, remaining unpaid and past due.

The bill further alleges that the defendants are threatening to institute various suits against the various complainants in divers jurisdictions upon said notes; that Herman H. Mohr, one of the signers of said notes, resides in Pierce, Nebraska; Carl F. Mohr and Adolph L. Herrig reside in Nashville, Tennessee; that Henry D. Mohr resides in Chatsworth, Iowa; that

Secord Henderson and Emil Herrig reside in Fargo, North Dakota; and that the other complainants reside in other cities in the same states mentioned; that the defendants, by instituting said various suits in said various jurisdictions will divert the litigation and the matters involved to said various foreign jurisdictions to the great and irreparable injury, hindrance, annoyance and expense of the complainants.

The bill prays that the defendants each be required to give a full and perfect discovery of all matters alleged and regarding which the complainants may hereafter specially interrogate them, that an accounting be had and that the defendant Smith be required to account for the moneys received by him by way of secret commission, and that the defendants Maytag and the Maytag Company be required to repay to the complainants the sums received by them from the complainants which in equity and good conscience they ought to be required to repay and that the notes now held by the defendants be surrendered or canceled. The bill also makes offers on the part of the complainants to do equity to all the defendants and to pay to the defendants what, if anything, should be found to be due from the complainants upon the final account. The bill also prays for temporary injunction against the defendants from transferring any of said notes and from instituting said suits thereon, and for general relief.

Upon this bill the injunction was granted, from which order the Maytag Company has prosecuted this appeal.

HERMAN FRANK and CHARLES B. HAFFENBERG, for appellant.

RYAN & CONDON, for appellees; IRVIN I. LIVINGSTON, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

It is first urged as ground for reversal that complainants have a full and adequate defense in a suit at law. The bill, however, seeks an accounting of funds said to have been wrongfully collected by Smith as secret commissions and profits, in violation of a position of trust and confidence, which funds have in part come into the hands of the other defendants, with knowledge of the facts and without consideration. It has been held repeatedly that courts of equity will take jurisdiction for the purpose of compelling an accounting by one standing in a fiduciary or confidential relation who is charged with fraud against his *cestui que trust*. Roby v. Colehour, 135 Ill. 300. Other considerations herein justifying equitable cognizance are fraud, discovery, an avoidance of a multiplicity of suits, and the impossibility of relief in a suit at law for certain of the complainants who have not signed the notes in question but who have agreed to indemnify the three complainants who signed the notes.

Criticism of the verification of the bill is made, in that it recites that the matters and things contained therein "are true in substance and fact as therein alleged;" and it is said that the essential allegations in the bill are made upon information and belief. Consideration of the allegations of the bill, in the light of many decisions of the courts, leads us to conclude that the criticism is not well taken and that the allegations are sufficiently positive to warrant the granting of the injunction. Campbell v. Paris & D. R. Co., 71 Ill. 611; Coryell v. Klehm, 157 Ill. 462; State v. Illinois Cent. R. Co., 246 Ill. 188; Greenberg v. Holmes, 100 Ill. App. 186; Story's Eq. Pl., sec. 255.

It is next urged that the injunction order is erroneous in that it did not require all of the complainants, instead of one or more, to sign the bond. This is a matter within the discretion of the chancellor, and his action will not be set aside unless it should appear that the discretion was improperly exercised. If the bond is sufficient as to surety and amount, which we must

assume to be the fact here, we see no good reason for requiring further signatures to it. At most the objection goes to the adequacy or form of the bond, and if necessary this may be remedied upon application to the chancellor. Herzberger v. Barrow, 115 Ill. App. 79.

In the reply brief of appellant it is argued in substance that the allegations of the bill are not sufficiently specific as to the notes in the hands of the Maytag Company, the collection of which is sought to be enjoined. We think it is sufficiently clear that the notes affected are any and all notes or renewals thereof which came from Hood to Smith in payment of the secret commissions or profits, and from Smith to Maytag and from Maytag to the Maytag Company.

The order granting the injunction is affirmed.

*Affirmed.*