EDWIN F. BAYLEY *et al.* Trustees, Appellees, *vs.* GEORGE NICHOLS, Appellant.

*Opinion filed April 23, 1914.*

1. PARTITION—*evidence of a parol partition must be clear and satisfactory.* A parol partition, followed by possession by the tenants in common of the parts allotted to them severally, is sufficient to protect each in his several shares set off to him by the agreement although it does not pass the legal title; but the evidence of the parol partition must be clear and satisfactory.

2. SAME—*when court of equity will not enforce an alleged parol partition.* A court of equity will not enforce an alleged parol partition as to a tract of land even though it is clear that the parties, before purchasing the property, contemplated a division according to the proportion of the consideration paid by each, where it is equally clear that their plan was changed after the property was acquired, so that each held an undivided interest in the tract.

3. SAME—*when party is liable to account for rental value of illegal structure.* The fact that a pier, constructed at the joint expense of tenants in common of a lot bordering on Lake Michigan, is an illegal structure as against the State, does not entitle one tenant in common to appropriate to himself the rent of the pier nor excuse him from liability for the rental value of the other co-tenant's share, as such matter is not based upon any contract prohibited by statute or declared illegal by law.

4. SAME—*rule where one tenant in common has made improvements.* In partition, if one of the tenants in common has made an improvement, the court, if possible, will allot the portion improved to the one making the improvement without taking into account its value, or, upon a sale, may allow the increased value of the premises caused by the improvement.

5. SAME—*when co-tenant is not entirely relieved from liability to account for rental value of pier.* Where one tenant in common erects a pier at his own expense, for which he receives rent, the fact that the pier was partly burned, so that it was a losing venture to him and his estate, does not entirely relieve his estate from liability to account for the rent received up to the time of the fire, even though his estate may be entitled to a credit for interest on the investment during such period.

6. PLEADING—*general rule as to setting up defenses of laches and Statute of Limitations.* Ordinarily the defense of *laches* must be set up by plea or answer, and the defense of the Statute of Limitations must be relied upon by demurrer or answer.

7. SAME—*when advantage of the Statute of Limitations may be taken by demurrer.* Where a bill shows delay and sets up causes and excuses for it, or where the bar appears on the face of the bill and the facts stated show that none of the exceptions in the Statute of Limitations take the case out of the bar, advantage of the statute may be taken by demurrer.

APPEAL from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

BEACH & BEACH, for appellant.

KALES, KELLY & HALE, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is a suit brought in the circuit court of Cook county by the appellees, as trustees of the estate of Jonathan Clark, deceased, against the appellant, George Nichols, for partition and accounting, in which the chancellor, upon a hearing of exceptions to the report of a master in chancery, confirmed the report, granted the relief prayed for in the original bill and dismissed the cross-bill filed by appellant.

The facts appearing from the evidence are as follows: In 1888 Jonathan Clark and the defendant, George Nichols, contemplated purchasing the block west of Lake avenue between Seventy-fifth and Seventy-sixth streets, in Chicago, and the land east of Lake avenue opposite the block, extending to Lake Michigan. Clark was to pay five-sevenths and Nichols two-sevenths of the purchase price, and the understanding was that they were to have the property in the same proportions, Clark to have five-sevenths and Nichols two-sevenths. The purchase price was not fully paid and the property was conveyed to Clark on December 31, 1888, for convenience. The same day Clark made a deed to Nichols of four lots in the block west of Lake avenue, composing the south two hundred feet of the block, and

the undivided two-sevenths of the shore lot lying east of
Lake avenue. It was not acknowledged until March 5,
1889, and was not delivered until January 14, 1895, when
it was recorded. In 1889 Clark and Nichols jointly con-
structed a pier at Seventy-sixth street, extending about four
hundred feet into the lake, at the south end of the shore
lot. Clark paid five-sevenths of the cost of the pier and
Nichols two-sevenths, and soon afterward Nichols built a
bath house on the pier, and has since used the pier as a
bathing resort or bathing beach in connection with the south
part of the shore lot and beach and has received the income
and profits from the use of the pier. Nichols built a fence
extending north about two hundred feet from the south end
of the shore lot, but the fence was not on the east line of
the avenue nor upon the dividing line between the north and
south parts of the lot. It was about twenty-five or thirty
feet east of Lake avenue, and he hired a team and man to
scrape sand from the street upon the shore lot and against
the fence, bracing and protecting the fence so as to prevent
invasion by the waters of Lake Michigan, and Clark paid
for the lumber for the fence. There was some accounting
for sand sold by Nichols, but there never was any gen-
eral accounting between Clark and Nichols. In 1893 Clark
wrote to Nichols, saying that it was about three years since
they had a settlement and suggesting that there ought to be
one, and that he ought to be consulted as he had paid five-
sevenths of the cost of the pier and had paid for a car-load
of lumber, and all that he saw was the two hundred feet
of fence in front of Nichols' own lot, and in that letter he
asked for a statement of affairs. In the year 1895 Clark
constructed at his own expense a pier at Seventy-fifth street
on the north end of the property, extending into the waters
of Lake Michigan, and he used that pier for a bathing beach
resort until his death, in 1902. That pier was destroyed by
fire in 1904, except the part near the shore, on which the
tenant of the complainants built a bath house, and they

have since received rent from the tenant for what was left of the pier.

It is contended that the chancellor erred in decreeing partition according to the legal titles of the parties, because there had been a parol partition between Nichols and Clark, which should be recognized and enforced by a court of equity. A parol partition followed by possession by the tenants in common of the parts allotted to them severally, is sufficient to protect each in his several share set off to him by the agreement although it does not pass the legal title, and a court of equity will confirm such a partition. (*Nichols* v. *Padfield,* 77 Ill. 253; *Hackleman* v. *Hackleman,* 199 id. 84.) But the evidence of such a partition must be clear and satisfactory. (*Ralls* v. *Ralls,* 82 Ill. 243.) There is no doubt that Clark and Nichols, before the purchase of the property, contemplated a division by which Clark would take five-sevenths and Nichols two-sevenths, but it is equally free from doubt that their plan was changed when the property was acquired, so far as the shore lot was concerned. The arrangement was carried out as to the block west of Lake avenue by a conveyance but it was abandoned as to the shore lot. There is no other reasonable explanation of the fact that while there was a division of the lots in the block the conveyance of the shore lot was of two-sevenths, and the further fact that Clark contributed five-sevenths of the cost of the pier at the south end. In his letter Clark said that he saw nothing of his car-load of lumber except the fence in front of Nichols' own lot, which either meant that part of the shore lot of which Nichols had possession or the part of the block that had been conveyed to him, since the other parts of the letter were inconsistent with any theory of a previous parol partition. By his answer Nichols claimed ownership of the south two hundred feet of the shore lot under the Statute of Limitations, but the evidence failed to show that his possession was adverse in its origin or that it ever became adverse to

Clark or the complainants. There was no error in decree-ing partition.

Both parties complain of that portion of the decree re-lating to the accounting, and errors and cross-errors have been assigned in reference thereto. On one side it is con-tended that the chancellor erred in requiring Nichols to ac-count at all for the use of the Seventy-sixth street pier, and if liable to account he was not allowed enough for repairs on the pier; and on the other side it is contended that the complainants should not be required to account for the use by Clark of the Seventy-fifth street pier or the rents re-ceived by them since his death, and that Nichols was al-lowed too much for repairs of the Seventy-sixth street pier. One ground for the claim that Nichols should not have been required to account for the use of the Seventy-sixth street pier is that it was an illegal structure on submerged lands of Lake Michigan, to which neither of the parties could have any title or right of property. The pier might have been removed at the instance of the State and might have been enjoined or abated as a purpresture. (*Revell* v. *Peo-ple,* 177 Ill. 468; *Cobb* v. *Commissioners of Lincoln Park,* 202 id. 427.) But it does not follow that Nichols had a right to appropriate to himself the use of the pier erected at the joint expense and that he is not liable for the rental value of Clark's share. No action can be maintained for a breach of an illegal contract, but the claim of the com-plainants to an accounting was not based on any contract prohibited by statute or declared illegal by law. The State had a right to object to an encroachment upon submerged lands but did not object, and the same rule would apply as in the case of the extension of a wharf beyond an es-tablished wharf line or a building or other structure en-croaching upon public grounds or a public way. (Gould on Waters, sec. 12; *Dutton* v. *Strong,* 1 Black, 23; *Revell* v. *People, supra.*) As the claim was not founded on the breach of an illegal contract the rule invoked does not apply.

It is also argued that the right to an account was barred by *laches* and limitations, but neither of these defenses was set up in the pleadings. Ordinarily the defense of *laches* must be set up by a plea or answer and the defense of the Statute of Limitations must be relied upon by demurrer or answer. Where a bill shows delay and sets up the causes and excuses for it, or where the bar appears on the face of a bill and the facts stated show that none of the exceptions in the statute take it out of the bar, advantage of the statute may be taken by demurrer. (*Coryell* v. *Klehm*, 157 Ill. 462; *Spalding* v. *Macomb and Western Illinois Railway Co.* 225 id. 585; *Schnell* v. *City of Rock Island*, 232 id. 89.) If the defense of *laches* had been made the complainants might have been able to amend their bill by alleging facts accounting for the delay, and a defense of the Statute of Limitations was not interposed either by demurrer or answer, so that neither *laches* nor limitations were in issue in any manner.

It is urged that Clark ought not to be charged the rental value of the Seventy-fifth street pier prior to his death, nor the complainants with rent actually received since his death, because Clark built the pier with his own funds and it was destroyed by fire, so that it was a losing venture to him and to his estate. In partition, if one of the tenants in common has made an improvement, the court, if possible, will allot the portion improved to the one making the improvement without taking into account its value, or upon a sale may allow the increased value of the premises caused by the improvement. (*Louvalle* v. *Menard*, 1 Gilm. 39; *Mahoney* v. *Mahoney*, 65 Ill. 406; *Manternach* v. *Studt*, 240 id. 464.) The pier having been burned and the complainants alleging that the remnant has no value, there would be nothing to be allowed for it upon a sale and it would not be considered an improvement in allotting the premises upon a division. It was located on the common property, and while it might be that in charging Clark with the rental value or the com-

plaintants with rent received up to the fire there might be an allowance of interest on the investment, the complainants could not be entirely relieved from the liability to account.

It would not be profitable to go into the details of the accounting as to either pier. No accounts were kept by either party, and owing to their neglect and the long lapse of time an accounting can only be approximately correct. After considering all the claims made on both sides we are satisfied that the accounting as approved by the chancellor is substantially right.

The decree is affirmed.                    *Decree affirmed.*